533 A.2d 1063

**Armond Cole DUMÉ, Appellant,**

**v.**

**ELKCOM COMPANY, INC., A Corporation, Adams Steel Erection Company, Inc., A Corporation, Burt Hill Kosar Rittleman Associates and Mosites Construction Company, Inc., A Corporation**

**v.**

**MULACH STEEL CORPORATION.**

Superior Court of Pennsylvania.

Argued Sept. 29, 1987.

Filed Nov. 23, 1987.

Francis C. Rapp, Jr., Pittsburgh, for appellant.

Louis C. Long, Pittsburgh, for Mosites, appellee.

Before CIRILLO, President Judge, and JOHNSON and MONTGOMERY, JJ.

CIRILLO, President Judge:

This is an appeal from a summary judgment entered by the Court of Common Pleas of Allegheny County against appellant Armond Dumé. We affirm.

On August 17, 1982, the appellant, Armond Dumé, sustained personal injuries in a fall while working on the construction of the Comstock Building in Pittsburgh, Pennsylvania. At the time of the mishap, Dumé was engaged in moving metal decking for the building's floor support at the request of his employer, Adams Steel Erection Company (Adams). Adams had been retained by the general contractor at the project, Mosites Construction Company (Mosites), to perform various tasks necessary for the completion of the building. Several other subcontractors, which were also named defendants in the instant action, participated in the raising of the structure.

Adams, as appellant's employer, possessed three separate contractual obligations in its role as subcontractor for Mosites. First, Adams was responsible for the erection of stairwells in the building and all details incident to their completion. Second, Adams was under an obligation to assure that all structural steel was properly supplied and installed. In so doing, Adams subcontracted with Mulach Steel Corporation to provide the structural steel. Last, Adams was required to oversee the installation of the metal decking for the building's floor support. For this aspect of the construction, Adams subcontracted with the H.H. Robertson Company.

Although the facts indicate that appellant was moving metal decking when the accident occurred, it is unclear which subcontract was being performed by Adams when Dumé fell. It is, however, undisputed that Dumé was performing duties under one of the previously mentioned subcontracts.

Appellant commenced this action on May 1, 1985, seeking damages for injuries that were allegedly caused by Mosites' negligent failure to provide him with a reasonably safe place in which to work. Adams, a named defendant in the suit, was immediately dismissed from the action because of its status as appellant's employer. Likewise, Mosites maintained that it was the "statutory employer" of appellant, thus entitling it to immunity from tort liability under the Pennsylvania Workmen's Compensation Act, 77 P.S. § 52. Mosites then sought dismissal from the suit by filing a motion for summary judgment. The motion was briefed by the parties and argued before the trial court. Upon a review of the facts and applicable law, Judge Standish entered an order, accompanied by a memorandum, granting Mosites' motion for summary judgment. Appellant appeals from the trial court's adverse judgment and order.

Appellant advances the following issue for our review: whether summary judgment was properly entered in favor of appellee, Mosites Construction Company, on the basis that it was the "statutory employer" of appellant pursuant

to the Pennsylvania Workmen's Compensation Act and consequently immune from common law liability for negligence.

Appellant contends that the trial court erred as a matter of law by granting summary judgment in favor of Mosites. Pennsylvania Rule of Civil Procedure 1035(b) provides, in pertinent part, that on a motion for summary judgment:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.C.P. 1035(b); *Zizza v. Dresher Mechanical Contractors*, 358 Pa.Super. 600, 518 A.2d 302 (1986), *petition for allowance of appeal*, (Nos. 1201, 1213 E.D.Alloc.Docket 1986 (Pa. Dec. 29, 1986). When reviewing a trial court's imposition of summary judgment, we have stated:

> Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. To determine the absence of a genuine issue of material fact, we must view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of judgment. In so doing, we accept as true all well-pleaded facts in appellant's pleadings and give appellant the benefit of all reasonable inferences to be drawn therefrom. Summary judgment is appropriate only in those cases which are clear and free from doubt.

*Bobb v. Kraybill*, 354 Pa.Super. 361, 364, 511 A.2d 1379, 1380 (1986) (citations omitted). Thus, an appellate court is required to determine the existence of any genuine issues of material fact which the trial court may have overlooked. In so doing, we may reverse the trial court only where there has been an error of law, or a clear or manifest abuse of

discretion. *Lened Homes v. Department of Licenses and Inspections,* 386 Pa. 50, 123 A.2d 406 (1956); *Peters Township School Auth. v. United States Fidelity & Guaranty Co.,* 78 Pa.Commw. 365, 467 A.2d 904 (1983). Applying these principles, we are faced with the resolution of whether the trial court properly concluded that no genuine issue of material fact existed and that appellant's claim was barred as a matter of law.

Appellant asserts that statutory interpretation of Pennsylvania's Workmen's Compensation Act, coupled with applicable case law, negates the conclusion that Mosites fell within the definition of a "statutory employer." Absent classification as a statutory employer, appellant maintains that Mosites cannot be afforded the benefit of immunity from common law tort liability as provided by the Act. Accordingly, appellant contends that his cause of action was authorized under the law, and summary judgment was erroneously granted by the trial court.

■ The status of "statutory employer" is defined in the Pennsylvania Workmen's Compensation Act as follows:

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52; *Perma–Lite of Pennsylvania, Inc. v. WCAB,* 38 Pa.Commw. 481, 393 A.2d 1082 (1978). Our legislature expressly provided for the concept of a statutory employer in an effort to clarify the liability of those employers who would be responsible under the auspices of the Act. *Qualp v. James Stewart Co.,* 266 Pa. 502, 109 A. 780 (1920). Under the guidelines set forth by the legislature, an employee covered by workmen's compensation surrenders his right to any other form of damages against his statutory employer. 77 P.S. § 481; *Colloi v. Philadelphia Electric*

*Co.,* 332 Pa.Super. 284, 481 A.2d 616 (1984), *allowance of appeal denied,* 332 Pa.Super. 284, 481 A.2d 616 (Pa.1985); *see also* 1 Barbieri, *Pennsylvania Workmen's Compensation & Occupational Disease,* § 4.09 (1975).

The seminal Pennsylvania case construing the concept of a "statutory employer" under the Act was our supreme court's decision in *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 153 A. 424 (1930) (construing Act of June 2, 1915, No. 338, § 203, 1915 Pa.Laws 736, 738 (current version at 77 P.S. § 52)). Therein, the court articulated five requirements which must be met by a general contractor in order to acquire the status of a statutory employer:

To create the relation of statutory employer under section 203 of the act, all of the following elements essential to a statutory employer's liability must be present: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor.

302 Pa. at 294–95, 153 A. at 428. The *McDonald* criteria have withstood the test of time and are now well-engrained in our jurisprudence. *See Zizza, supra; Cranshaw Construction, Inc. v. Ghrist,* 290 Pa.Super. 286, 434 A.2d 756 (1981); *Grant v. Riverside Corp.,* 364 Pa.Super. 593, 528 A.2d 962 (1987).

■ The parties do not dispute that requirements one, two, four, and five of the *McDonald* test are satisfied in this case. Thus, this court's focus turns to the disputed third requirement of *McDonald:* that the subcontract be made by the employer. Under this requirement, appellant asserts that a direct contractual relationship must exist between the principal contractor and the subcontractor whose employee becomes injured. In so reasoning, appellant argues that if Adams was engaged in the performance of a subcontract with one of the *other* contractors on the building site at the time of the injury, then Mosites cannot

be considered appellant's statutory employer. Consequently, appellant contends that summary judgment was improper since a genuine issue of material fact existed concerning the question of whether Adams was performing obligations under its subcontract with Mosites at the moment of appellant's injury.

Addressing appellant's argument, we first turn to the well-ensconced case of *Qualp v. James Stewart Co.*, *supra*. In *Qualp*, a widow of a deceased worker sought workmen's compensation benefits from the general contractor of a building project. The plaintiff's husband was employed by a remote subcontractor on the construction site. The general contractor had been unaware of the delegation of the particular task to the decedent's employer. Here, the court found it imperative to examine the Workmen's Compensation Act and its purposes in order to determine whether a specific relationship must exist between the general contractor and an employee of a subcontractor before the general contractor is liable for payment of benefits. Reviewing the underlying purposes of the Act, the court stated:

> The legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field and in the contracting scheme of work, the head of the endeavor, the person to whom an employee would naturally look.... The act intended to throw the burden on the man who secured the original contract from the owner to the end that employees of any degree doing work thereunder might always be protected in compensation claims.

266 Pa. at 509, 109 A. at 782. In holding that no immediate contractual relationship with the general contractor was required, the court proclaimed:

*The act did not intend to limit the "hiring a laborer" to a "contractor" standing in immediate contractual relation with the employer (original contractor);* it intended to include those laborers or employees who did work in furtherance of the employer's business, who were employed by any one having a lawful right or duty to engage in the business undertaking by the employer....

*Id.*, 266 Pa. at 508, 109 A. at 781 (emphasis added). Thus, the *Qualp* holding, which remains the law of Pennsylvania today, enunciates that privity of contract is not required between the general contractor and the actual employer of the injured workman for purposes of liability for workmen's compensation benefits.

Relying upon the reasoning set forth in *Qualp*, the United States District Court for the Eastern District of Pennsylvania rejected the notion that the general contractor loses common law tort immunity simply because it had insulated itself from liability for payment of benefits by requiring a subcontractor to insure that risk. *Fisher v. United States*, 299 F.Supp. 1 (E.D.Pa.1969), *rev'd in part on other grounds*, 441 F.2d 1288 (3d Cir.1971). In *Fisher*, the court stated as follows:

*The prime contractor can be held responsible for Workmen's Compensation coverage for, and immune from tort suit by, the employee of a second subcontractor, or subcontractor of his immediate subcontractor, on this basis as well.* The purpose of these provisions was to benefit the injured workman by definitely fixing some responsible party with the obligation of paying Workmen's Compensation, and picked the first in succession from the owner on the belief that the owner would be likely to contract only with responsible parties. Where the prime contractor becomes so obligated, the usual Workmen's Compensation arrangement does not hold between the employee and his immediate employer unless the prime contractor and immediate employer so agree. *However, providing the prime contractor does not reject the Workmen's Compensation Act, if the actual*

*employer does agree to provide Workmen's Compensation coverage, the prime contractor remains free from tort liability to the injured workman.* And if under these circumstances both prime contractor and immediate employer provide Workmen's Compensation coverage, it is the latter who is obligated to make payment if able.

*Id.* at 32 (emphasis added, citations omitted). Extrapolating upon this concept, Alexander F. Barbieri, Senior Judge to the Commonwealth Court of Pennsylvania, explains the general contractor's status as an injured worker's "statutory employer" under the Act in his treatise on Pennsylvania's workmen's compensation law. Judge Barbieri states as follows:

> [I]n negligence cases, the general contractor has the full immunity from suit by the employe of a subcontractor which an immediate employer would have. He is the statutory employer and is the injured employe's employer for negligence immunity purposes and is secondarily liable for compensation even though the immediate employer or some other intermediate subcontractor ... is insured and responds fully on the injured employe's claim. The reason for this difference cannot be found in the language of the statute, but the rationale must be that, since the general contractor remains statutorily liable, although only in a reserve status, in return for this he has the statutory employer's immunity from statutory employe negligence suits in all events.

1 Barbieri, *Pennsylvania Workmen's Compensation & Occupational Disease,* § 4.09(3) (1975) (footnotes omitted). This underlying tenet of workmen's compensation law has been categorically upheld by the Pennsylvania courts. *Capozzoli v. Stone & Webster Engineering Corp.,* 352 Pa. 183, 42 A.2d 524 (1945); *Cranshaw, supra; Bartley v. Concrete Masonry Corp.,* 322 Pa.Super. 207, 469 A.2d 256 (1983) (en banc).

Appellant attempts to diminish the precedential value of the previously mentioned case law through the application of this court's holding in *Stipanovich v. Westinghouse*

*Electric Co.*, 210 Pa.Super. 98, 231 A.2d 894 (1967). In *Stipanovich*, Westinghouse was under contract with the Atomic Energy Commission to engage in research and development of matters pertaining to atomic energy. Westinghouse was granted the use and control of the Bettis Atomic Power Laboratory to conduct its research. It then entered into an agreement with Eichleay Corporation for the installation of machinery in the laboratory. Stipanovich, an employee of Eichleay, was injured while participating in the placement of the research machinery in the lab. Stipanovich then instituted a trespass action against Westinghouse seeking recovery for his injuries. Westinghouse responded by raising the defense of its status as a "statutory employer." Here, Judge Hoffman rejected Westinghouse's assertion of immunity:

> We hold that Westinghouse is not a statutory employer because it has failed to establish that it was, in fact, obligated by contract to perform the activity in which Eichleay was engaged at the time of the accident.

210 Pa.Super. at 104, 231 A.2d at 897. It is critical to note, however, that the courts holding in *Stipanovich* turned specifically upon the fourth requirement of *McDonald:* that the work to be performed by the subcontractor be part of the general contractor's regular course of business. *Stipanovich* did not construe the third requirement of *McDonald,* which is at issue here. Consequently, the *Stipanovich* holding is inapposite to the facts presented at bar.

Applying the holdings of the above-discussed authorities, we find that Mosites would clearly be responsible for the remuneration of workmen's compensation benefits to a remote subcontractor's employee absent any express agreement requiring the subcontractor to insure its own workers. Likewise, the delegation of the duty to the subcontractor to insure its own workers does not abolish the general contractor's tort immunity under the Act. Since the existence of a contractual relationship is *not* a prerequisite to a general contractor's obligation to provide workmen's compensation benefits, it reasonably follows that no contractual relation-

ship need exist between the general contractor and the subcontractor in order for the general contractor to enjoy common law tort immunity under the Act. Mosites, as general contractor, retained secondary or contingent liability for worker's compensation benefits due the appellant and, conversely, enjoyed the privilege of common law tort immunity afforded by the Act. Accordingly, appellant's contention that a direct contractual relationship necessarily exist between the general contractor and a subcontractor in order for tort immunity to subsist is meritless.

Having reached this conclusion, we find that the trial court did not err by entering summary judgment in favor of appellee. The trial court correctly deduced that appellee construction company fell squarely within the five requirements enunciated in *McDonald* to qualify as appellant's statutory employer. In so finding, the court properly held that no genuine issue of material fact remained and appellee was entitled to summary judgment as a matter of law. Consequently, we affirm the order of the trial court granting Mosites' motion for summary judgment.

Judgment affirmed.