540 A.2d 944

**Robert COX and Gloria Cox, his wife**

v.

**TURNER CONSTRUCTION COMPANY, Appellant,**

v.

**OTIS ELEVATOR COMPANY.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1987.

Filed April 13, 1988.

Louis C. Long, Pittsburgh, for appellant.

Edward J. Balzarini, Jr., Pittsburgh, for Cox, appellees.

Before BECK, JOHNSON and HESTER, JJ.

HESTER, Judge:

Turner Construction Company ("Turner") appeals from the judgment entered following a jury verdict in favor of plaintiffs, Robert and Gloria Cox. Turner seeks reversal on the basis of alleged trial errors, chief among them the trial court's refusal to hold that Turner was plaintiff-Robert Cox's statutory employer under the Workmen's Compensation Act. Finding no merit to Turner's contentions, we affirm.

United States Steel Corporation planned to construct a skyscraper on a site which it owned on Grant Street in Pittsburgh. It designated USS Realty Development

("USR"), a division of United States Steel Corporation, as construction manager for the project. USR contracted with Turner to be the contractor, and negotiated a separate contract with Otis Elevator Company ("Otis") to install the elevators and escalators. Plaintiff, Robert Cox, whose injury led to this action, was an employee of Otis. Although it was Turner's responsibility to supervise the construction, it did not subcontract Otis; rather, USR itself subcontracted Otis. Turner's contract with USR provided:

> Under no circumstances shall contractor without the express written consent of USR, enter into any contracts for the construction of the Dravo Tower, it being the intent of USR to enter into all such contracts directly and thereafter (except as to the obligations of USR to make payment for work satisfactorily completed by the subcontractor and accepted by USR, the Contractor, and Architect) USR shall assign all of its contracts to Contractor.

USR also reserved the right to receive payments from subcontractors in the event that it incurred special expenses or damages as a result of subcontractors' activities. The contract which USR entered into with Otis provided for the partial assignment of USR's rights and liabilities to Turner.[1]

During the course of construction, plaintiff, an elevator mechanic for Otis, was assigned to transport to the thirtieth floor a load of materials and a Johnson bar dolly. Contrary to standards set by the American National Standards Institute, the Associated General Contractors of America, and the National Safety Council, the hoist (elevator) in which plaintiff was riding was not completely enclosed, and the Johnson bar protruded out the unenclosed side. As the

---

1. Turner's brief on appeal states at page 8: "Mr. Miller, a Turner superintendent, ... testified that Turner contracts to complete the entire project, including elevators, and that it then subcontracts the work." In fact, Ronald Miller testified that *in the typical* construction project, Turner subcontracts the work; however, Miller stated he was not familiar with the particular contractual arrangement in question, and specifically did not know whether the owner had itself separately contracted with Otis. It is not disputed that USR directly subcontracted Otis in this case. Miller's testimony may be read to support a conclusion that the instant contractual arrangement was not typical for Turner.

hoist passed the fifteenth floor, descending elevator counterweights struck the protruding Johnson bar, jolting the hoist and knocking the plaintiff down. His foot dangled off the side of the hoist and was crushed between the floor of the hoist and the door sills of two floors of the building. This action against Turner followed.

Following a jury trial, a verdict was entered in plaintiff's favor finding Turner sixty-five percent negligent in causing plaintiff's injuries and awarding damages in the sum of $119,619.50. The trial court rejected Turner's contention that it was plaintiff's statutory employer, finding it was not immune from common law liability. We agree.[2]

In assessing Turner's contention that it was the injured employee's statutory employer, we are mindful of the following guidelines:

> [V]ery great care ... must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer. Section 203 of the Workmen's Compensation Act, which was designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employers may seek refuge....

*Stipanovich v. Westinghouse Electric Corp.*, 210 Pa.Super. 98, 106, 231 A.2d 894, 898 (1967). *See Grant v. Riverside Corp.*, 364 Pa.Super. 593, 528 A.2d 962 (1987).

In construing section 203 of the Workmen's Compensation Act, our courts have held that five elements must be present before a contractor may be considered the statutory employer of another contractor's employees.

> To create the relation of statutory employer under section 203 of the act, all of the following elements essential to a statutory employer's liability must be present: (1) An employer who is under contract with an owner or one in

---

**2.** We disagree with appellees' contention that Turner waived its immunity defense by failing to plead it as an affirmative defense in its original answer to plaintiff's complaint. In *LeFlar v. Gulf Creek Industrial Park No. 2*, 511 Pa. 574, 515 A.2d 875 (1986), our supreme court held that the Workmen's Compensation Act is not an affirmative defense which may be waived if not timely pled.

the position of an owner. (2) Premises occupied by or under the control of the such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor.

*McDonald v. Levinson Steel Co.*, 302 Pa. 287, 294–95, 153 A. 424, 426 (1930). *See Zizza v. Dresher Mechanical Contractors*, 358 Pa.Super. 600, 518 A.2d 302 (1986) (*en banc*); *O'Boyle et ux. v. J.C.A. Corp., at al.*, 372 Pa.Super. 1, 538 A.2d 915 (1988); *Dume v. Elkcom Company, Inc.*, 368 Pa.Super. 280, 533 A.2d 1063 (1987); *Grant v. Riverside Corp., supra. McDonald, supra,* labeled these criteria as "essential." *Stipanovich v. Westinghouse Electric Corp., supra,* characterized them as "strict" requirements.

■ It is undisputed that Turner satisfied the first two and final two elements of the *McDonald* test. At issue is whether it satisfied the third element—"a subcontract made by such employer." Turner did not subcontract directly with Otis. Construing the third element of the *McDonald* test strictly, as *Stipanovich, supra,* stated we must, the absence of a "subcontract made by" Turner defeats its contention that it was plaintiff's statutory employer.

The viability of the requirement of a "subcontract made by" the contractor seeking statutory employer status was recently reaffirmed by this court in *Grant v. Riverside Corp., supra.* In *Grant,* the general contractor hired both Riverside Corporation and Reiling as subcontractors. Riverside agreed to install a hoist, and Reiling agreed to provide miscellaneous metal work and skilled ironworkers. Plaintiff's decedent, an employee of Reiling, fell to his death while working in the hoist. Plaintiff sued Riverside, and a jury verdict was entered in plaintiff's favor. On appeal, a panel of this court affirmed judgment, rejecting Riverside's contention that it should be afforded common law immunity as a statutory employer. We found that there was no "vertical relationship" between Riverside and Reiling as both were subcontractors hired by the general contractor. "Riverside," we wrote, "did not subcontract

Reiling." *Id.*, 364 Pa.Superior Ct. at 601, 528 A.2d at 966. Likewise in the instant case, Turner did not subcontract Otis; rather, Otis was subcontracted by USR. Therefore, Turner should not be afforded immunity from common law liability.[3]

Turner argues that despite the absence of a subcontract made by Turner with Otis, Turner should not be denied statutory employer status since a subcontracting *relationship* existed between them.

> The agreement gave Turner full control over the job site ... and directed Turner to coordinate the work of all subcontractors.... The contract between Otis Elevator and USR likewise recognized the centrality of Turner's role in the construction project by identifying Turner as the 'general contractor for the [p]roject' and instructing Otis, called the subcontractor, 'to deal with Turner in all matters relating to this [a]greement and [to] perform the [w]ork to the entire satisfaction of Turner.'
>
> ....
>
> USR's own contract with Turner gave Turner full control.... USR's subcontract with Otis Elevator ratifies its laissez-faire attitude.... Moreover, Otis agreed to perform to the satisfaction of Turner, not USR....

Appellant's brief at 17 and 21. As these passages illustrate, Turner would have us hold that the control which it

---

**3.** Turner argues that plaintiff is, in effect, estopped from arguing that Turner did not subcontract Otis because plaintiffs chose to seek recovery based upon § 416 Restatement (Second) of Torts. That section applies to "[o]ne who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm...." Turner contends that plaintiff cannot now retreat from his tactic of arguing that Turner employed Otis.

Turner's assertion is meritless. The Restatement of Torts and the statutory employer provision were obviously written to address different needs. It is conceded that, in one sense, Turner acted as an employer, and for the purposes of the Restatement of Torts it may be considered as such. The "statutory employer" definition is much stricter, however, requiring that five "essential" factors be present, including a subcontract made by the party seeking statutory employer status. It simply would be inappropriate to apply the Restatement of Torts to the question of whether Turner is a statutory employer under the Workmen's Compensation Act.

exercised over the construction project is evidence that the contractual arrangement was the "functional equivalent" of a subcontract. We disagree. Turner's control over the project is not an appropriate consideration in assessing whether the third prong of the *McDonald* test has been satisfied. Rather, a finding that Turner exercised control over the project would appear to support a holding that the *second* prong of the *McDonald* test—"premises occupied by or under the control of such employer"—has been satisfied. The second prong, however, is not at issue instantly; it is undisputed that it has been satisfied. Moreover, the second and third prongs of the *McDonald* test are distinct, and evidence which tends to prove the existence of one will not prove the existence of the other. We recently articulated this point in *Grant v. Riverside, supra,* where we denied Riverside statutory employer status since it did not enter into a subcontract with the injured worker's employer, Reiling. We noted, "Even were we to find that Riverside was in joint control of the work premises with [the general contractor], Riverside did not subcontract Reiling." *Id.* at 601, 528 A.2d at 966. Likewise instantly, Turner's control over the project lends no support to the argument that Turner subcontracted Otis.

In arguing that it should be considered plaintiff's statutory employer, Turner stresses the fact that USR assigned its contract with Otis to Turner and that the USR–Otis contract contemplated this assignment *ab initio.* We do not believe that the assignment of the USR–Otis contract to Turner, which was in reality a *partial* assignment, supports a holding that Turner subcontracted Otis.

██ It is well-settled that "[a]n assignment does not confer upon the assignee any greater right, power, or interest than that possessed by the assignor." *Pennsylvania Higher Education Assistance Agency v. Devore,* 267 Pa.Super. 74, 406 A.2d 343, 344 (1979). USR, standing in the owner's shoes, cannot be considered a statutory employer. *McDonald v. Levinson Steel Co., supra; Zizza v. Dresher Mechanical Contractors, Inc., supra.* Therefore,

USR could not confer upon Turner, by means of the assignment, an immunity from common law liability which it did not possess.

Similarly lacking in merit is Turner's contention that a novation was effected. According to Turner, "Otis agreed to accept Turner as the general contractor and it released the owner of the consequences of Turner's performance under the contract." Appellant's brief at 21.

■ A valid novation entails "the displacement and *extinction of a valid contract,* the substitution for it of a new contract ... a sufficient legal consideration for the new contract and the consent of the parties." *Buttonwood Farms, Inc. v. Carson,* 329 Pa.Super. 312, 317, 478 A.2d 484, 486 (1984) (emphasis in original). The contract between Otis and USR was not displaced; nor did a new Turner–Otis contract take its place. USR retained certain rights, including the right to act as construction manager and to make payments to Otis only after approving its work. Therefore, a novation was not effected.[4]

4. Turner cites *Springer v. United Engineers and Construction, Inc.,* 272 F.Supp. 833 (W.D.Pa.1967) in support of the holding it would have us reach. *Springer,* which has no binding precedential effect on our disposition, is distinguishable. There, the landowner subcontracted Babcock & Wilcox, the injured plaintiff's employer, to perform work on a boiler. The landowner subsequently assigned its contract with Babcock to United Engineers, another subcontractor. Importantly, United Engineers and Babcock entered into a "separate arrangement" for Babcock to do work on a clear well tank. It was while he was performing work on the latter project that plaintiff was injured. The district court held that United Engineers was plaintiff's statutory employer. Unlike the instant case, United Engineers entered into a separate arrangement with the immediate employer of the plaintiff. Moreover, unlike the instant case, the *Springer* court found that a novation had been effected.

Turner also cites *Capozzoli v. Stone & Webster Eng. Corp., supra,* which is also distinguishable. There, Publicker Commercial Alcohol Company (the owner) entered into a contractual arrangement with Stone & Webster Engineering Corporation and P.C. Hull. The injured plaintiff was an employee of Hull. Our supreme court held that Stone & Webster was plaintiff's statutory employer. Plaintiff argued that Stone & Webster was not its statutory employer due to the fact that he was hired by the owner, Publicker. *Capozzoli* is distinguishable in that Publicker (the owner), Stone & Webster (the statutory employer), and Hull (plaintiff's immediate employer) all entered into a single

The statutory employer provision was enacted to insure that injured workers whose employers failed to carry compensation insurance would not be denied relief. *Stipanovich v. Westinghouse Electric Corp., supra.* Soon thereafter, contractors "seized upon" the provision in hopes of reaping immunity from common law negligence liability. In response to this, our supreme court, in *McDonald v. Levinson Steel Co., supra,* set forth its five strict criteria. In the instant case, the contractor seeking immunity from common law liability, Turner, was found by a jury to have been negligent. The purposes for which the statutory employer provision was created would not be advanced by holding that, under the unique facts of the instant partial assignment arrangement, the *McDonald* criteria have been satisfied. These criteria should be applied strictly, especially where a negligent contractor seeks asylum from common law liability. The holding which Turner would have us reach would serve only to erect a shield behind which future negligent contractors would be permitted to hide. To this we decline to lend our approval.[5]

contract by which their rights and obligations were enumerated. Thus, unlike the instant case, the court was not called upon to decide a question concerning a partial assignment. Moreover, our review of *Capozzoli* fails to reveal a citation to *McDonald v. Levinson Steel Co., supra,* or a discussion of its five criteria. Thus, we do not have the benefit of the court's analysis as to how the *Capozzoli* facts satisfied the third criteria of *McDonald.* Now, more than forty years after the *Capozzoli* decision, our appellate decisions firmly recognize the viability of the *McDonald* factors, and regard them as "strict" criteria. *See Stipanovich v. Westinghouse Electric Corp., supra. See also Grant v. Riverside, supra. Grant* involves facts which are similar to *Capozzoli,* yet the *Grant* court emphasized the third element of the *McDonald* test as controlling. Consistent with the trend of our appellate decisions in recent years, the *Capozzoli* holding should not be read as expansively as Turner suggests.

5. Turner suggests that the instant assignment arrangement is the functional equivalent of a subcontract made by Turner. We are not prepared to agree. Such a holding could engender subtle, yet practical and significant, changes in the law. It could have the deleterious precedential effect of affording contractors in Turner's position statutory employer status based on an assignment arrangement, despite the fact that they have not actually selected at least the first subcontractor beneath them in the chain of command.

Turner also raises assertions of trial court error in instructing the jury. It argues that the court erred in refusing to instruct the jury that the mere happening of an accident is not evidence of negligence. "This requested charge," according to Turner, "would have explained to the jury that one of the permissible findings was that neither Turner nor the plaintiff was legally responsible for the accident." Appellant's brief at 25. This contention is meritless. In assessing this argument, we note the following guidelines:

> The failure to give a requested point for charge, which is accurate and applicable, is reversible error if the appellant has been prejudiced.... 'An omission to charge which leaves the jury without discretion on an important question, or which plainly tends to mislead them, is cause for reversal.'

*Furey v. Thomas Jefferson Univ. Hosp.*, 325 Pa.Super. 212, 227, 472 A.2d 1083, 1091 (1984) (citation omitted).

■ Turner's contention that the court's failure to give the instruction constitutes reversible error is made without

Under section 203 of the Act, our courts have held that if the immediate employer of the injured worker carries compensation insurance, the statutory employer is held only secondarily liable and still retains its common law immunity in exchange for its secondary liability. *See* A. Barbieri, *Pennsylvania Workmen's Compensation and Occupational Disease* § 4.09(3) (1975); *Cranshaw Construction Inc., v. Ghrist,* 290 Pa.Super. 286, 434 A.2d 756 (1981); *Capozzoli v. Stone & Webster Eng. Corp.,* 352 Pa. 183, 42 A.2d 524 (1945). By affording the statutory employer the right to select at least the first contractor beneath him, the law allows him to require that the contractor carry compensation insurance as a condition of being hired.

Under the holding that Turner would have us reach, the statutory employer would not necessarily have the right either to select any of his subcontractors or to require that they carry compensation insurance. Thus, he would potentially lose the ability to make himself only secondarily liable. He would also potentially lose the ability to select only those subcontractors whose safety records proved acceptable to him. Yet, despite losing the right of selection, presumably he would nevertheless remain liable for compensation even in those instances where he is not negligent. Turner's assertion that the instant contractual arrangement is the functional equivalent of a subcontract made by Turner would be more plausible were it shown that Turner had greater control, not merely over the actual construction, but also over the selection of at least the subcontractor immediately beneath him.

reference to supporting caselaw and is lacking in substance. The charge contained ample instruction that the jury was to decide whether Turner was negligent and whether such negligence was a substantial factor in bringing about plaintiff's injury. The court carefully defined negligence and substantial factor, and it noted Turner's assertion that plaintiff was contributorily negligent. Notes of Testimony, (N.T.), 4/7/86, at 424–31. It defies reason to suggest that the jury believed it was required to find that either Turner was negligent or that plaintiff was contributorily negligent. Therefore, the requested point was unnecessary and the instant assertion is meritless.

Turner also argues that the trial court erred in instructing the jury on the following point:

> The Plaintiffs in their case allege that the Defendant Turner Construction Company was expressly responsible for the safety and protection of workers on this project and was obligated and had the duty to implement supervising force and take any corrective measures in this regard.

> The Plaintiffs further allege that the Defendant, Turner Construction Company, was negligent in failing to carry out those duties in connection with the S–1 elevator upon which the husband Plaintiff was injured.

This point, according to Turner, included the concept embodied in Restatement (Second) of Torts, § 324A. Turner argues the charge was erroneous because "an essential element of recovery under section 324A ... is an increase of the risk of harm.... There was no evidence that any conduct of Turner's increased the risk of harm to plaintiff." Appellant's brief at 26.

■ We may not review this assertion as it has been waived due to Turner's failure to raise it with specificity in post-trial motions. Turner's post-trial motions included the following:

> The erred [sic] in granting plaintiffs' Point for Charge regarding the legal principle set forth in Restatement, Torts, Second, Section 324(A); defendant asserted the

grounds therefor by excepting to the trial judge charging in accordance with Restatement, Torts, Second 234(A).

The broad post-trial motion did not mention the specific error now asserted—that there was no evidence that any conduct of Turner's increased the risk of harm to plaintiff. Moreover, at trial Turner's counsel objected to the charge in the following manner:

I would take exception to the charge on Restatement 324A which has to do with the vicarious liability of the general contractor for the subcontractor. I don't believe that's applicable in this instance because, again, I believe this is a situation of collateral negligence of an independent contractor.

N.T., 4/7/86, at 451–52. This objection appears to be unrelated to the contention raised on appeal. Section 324(A) contains numerous elements and the broad post-trial motion, coupled with the objection made at trial, failed to adequately focus the trial court's attention on the argument for which relief is now sought. Inasmuch as we have no indication of record that the trial court was presented the specific argument now raised on appeal, we must consider this assertion waived. *See Frank v. Peckich,* 257 Pa.Super. 561, 391 A.2d 624 (1978); Pa.R.C.P. 227.1(b).

Turner also argues that the court erred in instructing the jury in accordance with § 416 of the Restatement (Second) of Torts. That section states:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Turner contends that the evidence showed no peculiar risks or special precautions taken; rather, the evidence merely

showed activities which were typical to a construction project. Turner cites the rule that an employer of a contractor is not liable for ordinary negligence in the performance of the work. Moreover, Turner complains that the court did not define "peculiar risk" or "special circumstances." These contentions are meritless.

■ The operation of an unenclosed hoist contrary to safety regulations constitutes a peculiar risk of harm. In *Jacobini v. I.B.M. Corp.*, 57 D & C 2d 8, 12; *aff'd. per curiam*, 222 Pa.Super. 750, 294 A.2d 756 (1972), the court stated:

> [T]he operation of a hoist which is not enclosed with meshing as dictated by regulation involves intrinsically a peculiar risk of physical harm no matter how carefully one might operate it. We would be inclined to hold otherwise if the accident ... resulted from ordinary negligence, e.g., if a worker negligently dropped a bucket of cement while removing it from the bucket hoist. But, to posit that the operation of an unenclosed elevator is not dangerous in and of itself seems totally disoriented from realistic and reasonable concepts of responsibility.

We agree with this reasoning. The evidence clearly showed that a peculiar risk of harm existed.

■ As for the trial court's failure to define the terms "peculiar risk" and "special precaution," we agree with the trial court's rationale that "the terms are both in common usage and required no further definition by the Court." Trial court opinion at 2. Therefore, this assertion is meritless.

Judgment affirmed.

BECK, J., concurs in the result.