570 A.2d 513

Michael TRAVAGLIA and Ilene Travaglia, Appellants,

v.

C.H. SCHWERTNER & SON, INC., United Engineers & Constructors, Inc. and Providence Steel Company. (Two Cases)

Michael TRAVAGLIA and Ilene Travaglia,

v.

C.H. SCHWERTNER & SON, INC., United Engineers & Constructors, Inc. and Providence Steel Company.

Appeal of C.H. SCHWERTNER & SON, INC., United Engineers & Constructors, Inc.

Superior Court of Pennsylvania.

Argued April 19, 1989.

Filed Dec. 29, 1989.

Reargument Denied March 8, 1990.

Joseph I. Fineman, Philadelphia, for Travaglia, appellants (at 2714 and 2715) and appellees (at 2826).

Frank C. Bender, Philadelphia, for Schwertner and United Engineers, appellants (at 2826) and appellees (at 2714 and 2715).

Andrew L. Braunfeld, Norristown, for Providence Steel, appellee (at 2714, 2715 and 2826).

Before CIRILLO, President Judge, and MELINSON and HESTER, JJ.

HESTER, Judge:

Appellants, Michael and Ilene Travaglia, appeal from the September 1, 1989 order entered by the Court of Common Pleas of Philadelphia County granting summary judgment in favor of United Engineers & Constructors, Inc. We reverse and remand for trial.

The record reveals the following. In November, 1972, Philadelphia Electric Company (PECO) entered into an agreement with United Engineers & Constructors (United) whereby United would furnish consulting, engineering, design and construction services for various pollution control facilities of PECO. United thereafter proceeded to supervise construction of various facilities of PECO, including those at its Eddystone power station. On October 26, 1981, PECO and United updated and formalized United's obligation to continue to provide consulting, engineering, design, and construction services for this project.

In April, 1981, PECO entered into a written contract with C.H. Schwertner & Son, Inc. (Schwertner) whereby PECO was to pay Schwertner $2,240,958.00 to design and construct four concrete storage silos using the slip-form method of construction, a highly sophisticated procedure wherein concrete and reinforced steel are installed in forms to create the silo walls in a continuous-pour basis, an operation wherein United lacked expertise. This construction was to be done at the PECO Eddystone power station. The contract was signed by United but solely on behalf of PECO; United was not a party to this contract. Schwertner then entered into a sub-contract with Providence Steel Company (Providence) for the installation of steel reinforcing bars in the walls where the concrete was to be poured. Plaintiff-appellant Travaglia was employed by Providence and was injured while employed.

Travaglia argues that the trial court erred as a matter of law by granting summary judgment in favor of United on the basis of statutory employer immunity after all parties had stipulated that Schwertner was Travaglia's statutory employer. Pennsylvania Rule of Civil Procedure 1035(b) provides, in pertinent part, that on a motion for summary judgment:

> [t]he judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.C.P. 1035(b); *Dume v. Elkcom Co.*, 368 Pa.Super. 280, 533 A.2d 1063 (1987).

When reviewing a trial court's imposition of summary judgment, we have stated:

> Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law. To determine the absence of a genuine issue of material fact, we must view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of judgment. In so doing, we accept as true all well-pleaded facts in appellant's pleadings and give appellant the benefit of all reasonable inferences to be drawn therefrom. Summary judgment is appropriate only in those cases which are clear and free from doubt.

*Bobb v. Kraybill,* 354 Pa.Super. 361, 364, 511 A.2d 1379, 1380 (1986) (citations omitted). Thus, we are required to determine the existence of any genuine issues of material fact which the trial court may have overlooked. In so doing, we may reverse the trial court only where there has been an error of law, or a clear or manifest abuse of discretion. *Lened Homes v. Department of Licenses and Inspections,* 386 Pa. 50, 123 A.2d 406 (1956); *Dume v. Elkcom Co., supra; Peters Township School Auth. v. United States Fidelity & Guaranty Co.,* 78 Pa.Cmwlth. 365, 467 A.2d 904 (1983). Applying these principles, we must resolve whether the trial court properly concluded that no genuine issue of material fact existed and whether Travaglia's claim was barred as a matter of law.

Travaglia argues that United was not a party to the silo construction contract between PECO and Schwertner, and further, that United's prior letter agreement contract with PECO was not referenced in any PECO–Schwertner contract. Due to this omission, and the fact that PECO allegedly paid Schwertner directly, Travaglia maintains that United cannot be considered the general or principal contractor of the silo construction. Without the status of principal or general contractor, United cannot claim immunity as the "statutory employer" under the Workmen's Compensation Act. "Most compelling," appellant states, "is the argument that under the rationale of *McDonald v. Levinson Steel Company,* 302 Pa. 287, 153 A. 424 (1930), an owner or one standing in the place of an owner cannot be a statutory employer." Appellant's brief at 14.

In evaluating United's contention that United was Travaglia's statutory employer, we must keep in mind the following guidelines:

[V]ery great care ... must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer. Section 203 of the Workmen's Compensation Act, which was designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employers may seek refuge.

*Stipanovich v. Westinghouse Electric Corp.*, 210 Pa.Super. 98, 106, 231 A.2d 894, 898 (1967). *See Grant v. Riverside Corp.*, 364 Pa.Super. 593, 528 A.2d 962 (1987).

In construing section 203 of the Workmen's Compensation Act, we held that five elements must be present before a contractor may be considered the statutory employer of another contractor's employees.

To create the relation of statutory employer under section 203 of the act, all of the following elements essential to a statutory employer's liability must be present: (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor.

*McDonald v. Levinson Steel Co., supra*, 302 Pa. at 294–95, 153 A. at 428; *Cox v. Turner Construction Co.*, 373 Pa.Super. 214, 540 A.2d 944 (1988); *see also Zizza v. Dresher Mechanical Contractors*, 358 Pa.Super. 600, 518 A.2d 302 (1986) (*en banc*); *O'Boyle et ux. v. J.C.A. Corp., et al.*, 372 Pa.Super. 1, 538 A.2d 915 (1988); *Dume v. Elkcom Company, Inc., supra; Grant v. Riverside Corp., supra. McDonald v. Levinson Steel Co., supra*, labeled these criteria as "essential." *Stipanovich v. Westinghouse Electric Corp., supra*, characterized them as "strict" requirements.

Travaglia was an employee of Providence; Providence was subcontracted by Schwertner. Schwertner was contracted by the owner, PECO. United was not involved in this chain of contracts. United was not a party to the contract between PECO and Schwertner. Consequently, summary judgment should not have been awarded to United. The following three findings of the trial court are in error: 1) that Travaglia was an employee of a second subcontractor of United; 2) that United need not be a party to the construction contracts in question to fulfill requirement number three of the *McDonald* mandate; and 3) that no direct contractual relationship is necessary for United to be entitled to common law tort immunity.

A reading of the *McDonald, Stipanovich, Grant,* and *Cox* opinions substantiates this conclusion. The *McDonald* test requires that to create the relationship of statutory employer under section 203 of the act, the following element must be present: "(3) A subcontract made by such employer." Construing the third element of the *McDonald* test strictly as *Stipanovich* stated we must, the absence of a subcontract made by United to either Schwertner or Providence defeats its contention that it was Travaglia's statutory employer.

The viability of the requirement of a "subcontract made by" the contractor seeking statutory employer status was recently reaffirmed by this court in *Grant v. Riverside Corp., supra.* In *Grant*, the general contractor hired both Riverside Corporation and Reiling as subcontractors. Riverside agreed to install a hoist, and Reiling agreed to provide miscellaneous metal work and skilled ironworkers. Plaintiff's decedent, an employee of Reiling, fell to his death while working in the hoist. Plaintiff sued Riverside, and a jury verdict was entered in plaintiff's favor. On appeal, a panel of this court affirmed the judgment, rejecting Riverside's contention that it should be afforded common law immunity as a statutory employer. We found that there was no "vertical relationship" between Riverside and Reiling as both were subcontractors hired by the general

contractor. "Riverside," we stated, "did not subcontract Reiling." *Id.*, 364 Pa.Super. at 601, 528 A.2d at 966. Likewise in the instant case, United did not subcontract Schwertner, nor Providence; rather, Schwertner was contracted by PECO and in turn, subcontracted Providence. United was not a party to either of these contracts. It follows, therefore, that United should not be afforded immunity from common law liability as to employees of Providence or Schwertner.

The fact situation before us is on all fours with our recent opinion in *Cox v. Turner Construction Co., supra.* There, United States Steel Corporation planned to construct a skyscraper in downtown Pittsburgh. It designated a corporate sub-division, USS Realty Development (USR) as construction manager for the project. USR contracted with Turner Construction to be the contractor. USR then negotiated a separate contract with Otis Elevator Company (Otis) to install the elevators and escalators. Although it was Turner's responsibility to supervise the construction, it did not subcontract Otis; rather, USR subcontracted Otis. Otis was paid by USR, not Turner. Plaintiff Cox, an employee of Otis, was injured as a result of Turner's negligence and entered suit against Turner. Turner defended on the ground that it was plaintiff's statutory employer, that its contract with USR gave it full control over the job site and directed it to coordinate the work of all subcontractors, that the contract between Otis and USR recognized the centrality of Turner's role in the construction project by identifying Turner as the general contractor and instructing Otis, described as the subcontractor, to deal with Turner in all matters "relating to this agreement" and to perform the work to the entire satisfaction of Turner.

The trial court disagreed and submitted the case to the jury, which returned a verdict in favor of Cox. On appeal, we affirmed on the basis that the third element required by *McDonald* was lacking i.e., that there was no contract between Turner and Otis; therefore, Turner could not be the statutory employer of Otis' employees. Turner argued

that, despite the absence of a subcontract between Turner and Otis, it should not be denied statutory employer status since a subcontract relationship existed between them. We held:

> Turner would have us hold that the control which it exercised over the construction project is evidence that the contractual agreement was the "functional equivalent" of a subcontract. We disagree. Turner's control over the project is not an appropriate consideration in assessing whether the third prong of the *McDonald* test has been satisfied. Rather, a finding that Turner exercised control over the project would appear to support a holding that the *second* prong of the *McDonald* test— "premises occupied by or under the control of such employer"—has been satisfied. The second prong, however, is not at issue instantly; it is undisputed that it has been satisfied. Moreover, the second and third prongs of the *McDonald* test are distinct, and evidence which tends to prove the existence of one will not prove the existence of the other. We recently articulated this point in *Grant v. Riverside, supra,* where we denied Riverside statutory employer status since it did not enter into a subcontract with the injured worker's employer, Reiling. We noted, "Even were we to find that Riverside was in joint control of the work premises with [the general contractor], Riverside did not subcontract Reiling." *Id.* at 601, 528 A.2d at 966. Likewise instantly, Turner's control over the project lends no support to the argument that Turner subcontracted Otis.

*Cox v. Turner Construction Co., supra,* 373 Pa.Super. at 220–21, 540 A.2d at 947.

Instantly, the lower court, in reasoning that no contractual relationship was required between United and Schwertner or Providence in order for United to be immune from common law tort action, relied on *Dume v. Elkcom Company, Inc., supra.* which, in turn, relied on *Qualp v. James Stewart Co.,* 266 Pa. 502, 109 A. 780 (1920). The *Dume* court, in discussing the *Qualp* opinion stated:

*Thus, the Qualp holding, which remains the law of Pennsylvania today, enunciates that privity of contract is not required between the general contractor and the actual employer of the injured workman for purposes of liability for workmen's compensation benefits.*

*Dume v. Elkcom Company, Inc., supra*, 368 Pa.Super. at 287, 533 A.2d at 1067 (emphasis added). The court further stated:

Since the existence of a contractual relationship is *not* a prerequisite to a general contractor's obligation to provide workmen's compensation benefits, it reasonably follows *that no contractual relationship need exist between the general contractor and the subcontractor in order for the general contractor to enjoy common law tort immunity under the Act.*

*Id.*, 368 Pa.Super. at 289–90, 533 A.2d at 1068 (emphasis added).

We disagree. The holding in *Qualp* has been superseded by the supreme court's mandate set forth in *McDonald*. The fiction of statutory employer was created to fix the responsibility for the obligation of paying compensation to injured workmen. The well-reasoned opinion of Judge Hoffman in *Stipanovich v. Westinghouse Electric Corp., supra,* outlines the reason for the enactment of the statutory employer legislation and the development of the condition which resulted in the Pennsylvania Supreme Court creating the five strict requirements in the *McDonald* opinion. Judge Hoffman stated:

The status of statutory employer was created under § 203 of the Workmen's Compensation Act which provides: "An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own

employe." Act of June 2, 1915, P.L. 736, art. II, § 203, as amended, 77 P.S. § 52.

The purpose of this provision was set forth in *Qualp v. James Stewart Co.*, 266 Pa. 502, 509, 109 A. 780, 782 (1920): "The Legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field and in the contracting scheme of work, the head of the endeavor, the person to whom an employee would naturally look.... The Act intended to throw the burden on the man who secured the original contract from the owner to the end that employees of any degree doing work thereunder might always be protected in compensation claims."

Soon thereafter, however, the statutory employer provision, which had been enacted for the purpose of extending workmen's compensation coverage to employees whose immediate employers were not covered, was seized upon by employers as a possible defense against common law negligence liability.

In recognition of this development, the Supreme Court, in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 295, 153 A. 424, 426 (1930), set forth five strict requirements under § 203 of the Act which an employer must meet to establish that he is a statutory employer, and thus avoid liability at common law. They are: "(1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor."

. . . .

Both the Supreme Court in *McDonald* and the Court of Appeals in *Jamison [v. Westinghouse Electric Corp.*, 375

F.2d 465 (3d Cir.1967)] recognized the very great care which must be exercised before allowing an employer to avoid his liability at common law by asserting that he is a statutory employer. Section 203 of the Workmen's Compensation Act, which was designed to extend benefits to workers, should not be casually converted into a shield behind which negligent employers may seek refuge. We hold that the inconclusive contracts relied upon by Westinghouse do not warrant our finding that Westinghouse was a statutory employer.

*Stipanovich v. Westinghouse Electric Corp., supra,* 210 Pa.Super. at 100–101, 106, 231 A.2d at 895–96, 898.

In *Stipanovich* we applied the *McDonald* test and determined Westinghouse was not the statutory employer of plaintiff since it failed to comply with the fourth *McDonald* requirement. Instantly, United is not Travaglia's statutory employer. United has not satisfied the third element of *McDonald* —"a subcontract made by such employer."

The holding in *Qualp,* decided in 1920, has been drastically changed by the requirements set forth by the Pennsylvania Supreme Court in *McDonald.* Employers seeking refuge behind the shield provided by the position of statutory employer must meet the five strict requirements mandated by *McDonald.* This United has failed to do.

As stated above, PECO contracted Schwertner, not United. United was not a party to this contract. PECO paid Schwertner, not United. Schwertner subcontracted Providence, not United. Travaglia was an employee of Providence. Providence was not a subcontractor of United but of PECO. Consequently, summary judgment should not have been granted to United.

The purposes for which the statutory employer provision was created would not be advanced by holding that, under the unique undisputed facts in this appeal from the issuance of a summary judgment, the *McDonald* criteria have been satisfied. These criteria must be applied strictly, particularly where an allegedly negligent contractor seeks asylum from common law liability. The holding of the trial court

would serve only to erect a shield behind which future negligent contractors will be permitted to hide.

Reversed and remanded for trial. Jurisdiction relinquished.

MELINSON, J., files a concurring statement.

CIRILLO, President Judge, files a dissenting statement.

MELINSON, Judge, concurring.

I join the majority opinion of our distinguished colleague, Judge Hester. I take this opportunity solely to note my opinion that Sections 203 and 302 of the Workmen's Compensation Act have outlived their usefulness. Section 203 states as follows:

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

Act of June 2, 1915, P.L. 736, art. II, § 203, as amended by the Act of June 21, 1939, P.L. 520, § 1 *et seq.*, 77 Pa.Stat. Ann. § 52. From this parcel of legislative enactment sprung the case law that the majority was constrained to follow in rendering its decision at bar. *See McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930); *O'Boyle v. J.C.A. Corporation*, 372 Pa.Super. 1, 538 A.2d 915 (1988); Majority Memorandum at 7–12.

Section 302 was recently amended in 1974. Subsection (a) of this section, in pertinent part, states as follows:

A contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractors *unless the subcontractor primarily liable for the payment of such compensation has secured its payment as pro-*

*vided for in this act. Any contractor or his insurer
who shall become liable hereunder for such compensa-
tion may recover the amount thereof paid and any
necessary expenses from the subcontractor primarily
liable therefor.*

77 Pa.Stat.Ann. § 461 (emphasis added).

Subsection (b) of Section 302 states:

Any employer who permits the entry upon premises
occupied by him or under his control of a laborer or an
assistant hired by an employe or contractor, for the
performance upon such premises of a part of such em-
ployer's regular business entrusted to that employe or
contractor, shall be liable for the payment of compensa-
tion to such laborer or assistant *unless the hiring em-
ploye or contractor, if primarily for the payment of
such compensation, has secured the payment thereof as
provided for in this act. Any employer or his insurer
who shall become liable hereunder for such compensa-
tion may recover the amount thereof paid and any
necessary expenses from another person if the latter is
primarily liable thereof.*

77 Pa.Stat.Ann. § 462 (emphasis added).

While Section 302 is substantially similar to Section 203,
there is no mention whatsoever in Section 302 that it is
replacing or amending the provisions of Section 203. Ac-
cordingly, ambivalence has resulted in appellate decisions.
This court has both utilized Section 203 exclusively and has
given effect to both Sections 203 and 302 in interpreting
statutory employer immunity. *See and compare O'Boyle
v. J.C.A. Corporation,* 372 Pa.Super. 1, 538 A.2d 915 (1988),
with *Cranshaw Construction Inc. v. Ghrist,* 290 Pa.Super.
286, 434 A.2d 756 (1981). In contrast, our Commonwealth
Court has recently cited Section 302 as the amendment to
Section 203, employing the language of 302 solely to decide
the same issue. *Ace Tire Company v. Workmen's Com-
pensation Appeal Board,* 101 Pa.Cmwlth. 186, 515 A.2d
1020 (1986). Clearly, confusion abounds as to which legisla-
tive enactment represents the Commonwealth's position on

statutory employer immunity. Under the standards of both sections, however, I believe that the statutory employer immunity doctrine articulated is contrary to basic tenets of American law.

Under these sections, general contractors are completely insulated from tort liability for negligent or grossly negligent acts. Furthermore, as is clear from their language, these sections of the Workmen's Compensation Act "operate to relieve [the general contractor] from payment of [workmen's] compensation by placing that responsibility upon the subcontractor." *Capazzoli v. Stone & Webster Engineering Corporation*, 352 Pa. 183, 188, 42 A.2d 524, 526 (1945); *see also Cranshaw*, 290 Pa.Super. 286, 434 A.2d 756. As stated by Arthur Larson, James B. Duke Professor of Law at the Duke University School of Law, "in the increasingly common situation displaying a hierarchy of principal contractors upon subcontractors upon subcontractors, if an employee of the lowest subcontractor on the totem pole is injured, there is no practical reason for reaching up the hierarchy any further than the first insured contractor." Larson, Workmen's Compensation Law, § 49.14.

Thus, the effect of these abhorrent legislative pronouncements is to absolve a general contractor of any and all responsibility for negligent or grossly negligent conduct without even imposing upon that contractor the corresponding duty to compensate an injured employee under Workers' Compensation. Our judicial system is based upon the concept that individuals and corporations alike will be held accountable for their mistakes and indiscretions. To allow general contractors to escape from any sort of liability for injuries to the employees of their subcontractors, without any examination of the circumstances of the injury, clearly runs counter to this fundamental concept.

CIRILLO, President Judge, dissenting:

I respectfully dissent. I would find that United Engineers & Constructors, Inc. ("United") was the statutory

employer of the appellant, Michael Travaglia ("Travaglia"), and therefore was entitled to common law tort immunity. Consequently, I would affirm the trial court's order granting United's motion for summary judgment as a matter of law.

On May 13, 1981, Travaglia sustained injuries to his ankle and foot while participating in the construction of four concrete storage silos at an electrical generating station in Eddystone, Pennsylvania. The station is owned by the Philadelphia Electric Company ("PECO"). Prior to 1971, PECO had received a directive from the Environmental Protection Agency mandating that it undertake measures to clean sulphur dioxide fumes which were being emitted from the chimneys at the general operating station. Pursuant to that order, PECO retained United to furnish consulting, engineering, design, and construction services for the project. Among its duties, United was obligated to construct foundations, structures, and auxiliaries; install piping, electrostatic precipitators, ash disposal systems, electrical equipment and wiring; provide a switchyard, and yard facilities, and service equipment necessary for the completion of the job. As "constructors," United agreed to "execute the construction and to install the machinery and equipment with [United]'s forces;" except in instances where PECO and United "consider[ed] it advantageous, parts of the work [were to be] let to contractors." The contract expressly provided that all orders and contracts placed by United would be in the name of PECO and signed by United as agents for PECO.

On April 20, 1981, United, acting as agents for PECO, entered into a contract with C.H. Schwertner & Son, Inc. ("Schwertner"), for the design and construction of four silos intended to be used as storage facilities for magnesium oxide and magnesium sulfate ores. These silos were to be constructed using the slip form method of construction. In order to fulfill its contractual obligation, Schwertner entered into an agreement with Providence Steel Company ("Providence"), Travaglia's employer. While Travaglia was

performing his duties, he allegedly slipped on an accumulation of wet concrete or oil which had been spilled on the silo work platform.

The majority, applying the criteria set forth in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), concludes that United could not be a statutory employer because the contract entered into with Schwertner was not a "subcontract made by" United, and therefore United did not satisfy the third element of the *McDonald* test for acquiring the status of a statutory employer. I disagree.[1]

It is well-settled that to become a statutory employer under the Workmen's Compensation Act ("Act"), the following five elements must be present:

(1) An employer who is under contract with an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor.

*McDonald*, 302 Pa. at 294–295, 153 A. at 428.

By utilizing the reasoning of *Grant v. Riverside Corp.*, 364 Pa.Super. 593, 528 A.2d 962 (1987), *Cox v. Turner Construction Co.*, 373 Pa.Super. 214, 540 A.2d 944 (1988), and *Stipanovich v. Westinghouse Electric Corp.*, 210 Pa. Super. 98, 231 A.2d 894 (1967) to reach its conclusion, the majority assails the rationale espoused in *Qualp v. James Stewart Co.*, 266 Pa. 502, 109 A. 780 (1920), and applied in *Dume v. Elkcom Co.*, 368 Pa.Super. 280, 533 A.2d 1063 (1987). In *Dume*, as in the instant case, the third element of the *McDonald* test was at issue.

Initially, it is imperative to recall the underlying purposes of the Workman's Compensation Act ("Act"), as stated in *Qualp:*

The legislature wanted to definitely fix some responsible party with the obligation of paying compensation to in-

1. Although the majority concludes that United did not satisfy the third element of the *McDonald* test, the appellants contend in their brief that only the first and fourth requirements of *McDonald* are at issue in this case.

jured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field and in the contracting scheme of work, the head of the endeavor, the person to whom an employee would naturally look.... The act intended to throw the burden on the man who secured the original contract from the owner to the end that employees of any degree doing work thereunder might always be protected in compensation claims.

*Qualp*, 266 Pa. at 509, 109 A. at 782. Thus, an immediate contractual relationship is not required between the general contractor and an employee of a subcontractor before the general contractor is liable for the payment of workmen's compensation benefits to that employee. *Id.* at 508, 109 A. at 781; *Dume*, 368 Pa.Super. at 287, 533 A.2d at 1067. Likewise, since a direct contractual relationship is unnecessary to expose a general contractor to liability for workmen's compensation benefits, such a contractual relationship should not be required to achieve the status of a statutory employer. The rationale underlying the above concept is explained in Judge Barbieri's treatise on Pennsylvania's workmen's compensation law:

[I]n negligence cases, the general contractor has the full immunity from suit by the employe of a subcontractor which an immediate employer would have. He is the statutory employer and is the injured employe's employer for negligence immunity purposes and is secondarily liable for compensation even though the immediate employer or some other intermediate subcontractor ... is insured and responds fully on the injured employe's claim. The reason for this difference cannot be found in the language of the statute, but the rationale must be that, since the general contractor remains statutorily liable, although only in a reserve status, in return for this he has the statutory employer's immunity from statutory employe negligence suits in all events.

1 Barbieri, *Pennsylvania Workmen's Compensation & Occupational Disease*, § 4.09(3) (1975) (footnotes omitted); *see also Dume*, 368 Pa.Super. at 288, 533 A.2d at 1067. I am in complete concurrence with Judge Barbieri's analysis. To engage in an intricate labelling of the parties, and embark on a protracted and detailed analysis of whether a general contractor is a statutory employer entitled to tort immunity, as the majority does here, can only lead to a spate of decisions with no resulting uniformity. When a party is either primarily or secondarily liable for workmen's compensation benefits to a plaintiff, that party should be granted the protection of common law tort immunity. This approach remains mindful that the Pennsylvania Workmen's Compensation Act was promulgated to "protect employees and their families by *insuring quick and certain payment for work-related injuries without having to resort to the courts." Wagner v. National Indemnity Co.*, 492 Pa. 154, 161–162, 422 A.2d 1061, 1065 (1980) (plurality opinion) (emphasis added); *Blouse v. Superior Mold Builders, Inc.*, 363 Pa.Super. 516, 518, 526 A.2d 798, 799 (1987).

Here, it is clear that United has a contingent liability for the payment of workmen's compensation benefits to Travaglia. *See* 77 P.S. §§ 461, 462. Consequently, United should enjoy the privilege of common law tort immunity afforded by the Act. *Dume*, 368 Pa.Super. at 290, 533 A.2d at 1068.

> Since the existence of a contractual relationship is not a prerequisite to a general contractor's obligation to provide workmen's compensation benefits, it reasonably follows that no contractual relationship need exist between the general contractor and the subcontractor in order for the general contractor to enjoy common law tort immunity under the Act.

*Dume*, 368 Pa.Super at 289–290, 533 A.2d at 1068. It is my belief that the third requirement of the *McDonald* test does not mandate that a strict contractual relationship be demonstrated to afford a party the protections of a statutory employer. Because I would conclude that United was a

statutory employer under the Act entitled to common law tort immunity, and that the trial court was correct in granting United summary judgment as a matter law, I respectfully dissent.