542 A.2d 181

Fred Caldarelli, and Rockwood Insurance Company, Petitioners *v.* Workmen's Compensation Appeal Board (Mastromonaco and James Dean and Altec Corporation), Respondents.

Submitted on briefs February 4, 1988, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Mark Gordon,* with him, *Daniel D. Harshman, Peitragallo, Bosick & Gordon,* for petitioners.

*Arthur J. Leonard,* with him, *Thomas V. Gebler, Jr., Robb, Leonard & Mulvihill,* for respondents.

Opinion by Judge Craig, May 4, 1988:

Fred Caldarelli appeals from an order of the Workmen's Compensation Appeal Board (board) that affirmed an order of a referee directing Caldarelli or his insurance carrier to pay workers' compensation benefits to Ronald R. Mastromonaco (claimant). The referee concluded that Caldarelli was a statutory employer as to the injured claimant and hence was responsible for the payment of benefits.

The sole issue is whether substantial evidence of record supports certain findings by the referee essential to his conclusion that Caldarelli was the statutory employer.[1]

The undisputed facts, as set forth in the referee's findings, are that on September 13, 1984, the claimant sustained injuries to his head and both lower legs while performing his duties as a painter employed by James Dean (Dean) (Findings Nos. 2 and 3).[2] When this accident happened, Dean had no workers' compensation insurance in effect and had not otherwise secured the payment of compensation (Finding No. 13). Al-Tech Construction Consultants, Inc. (Altec) was the owner of

---

[1] The Pennsylvania Supreme Court has held that, under section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, our scope of review of a decision of an administrative agency, such as the Workmen's Compensation Appeal Board, is limited to determining whether there has been a constitutional violation or an error of law or whether the necessary findings of fact are supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

[2] Although not expressly found as a fact by the referee, the testimony is uncontradicted that the claimant was on the roof of a model home under construction applying wood preservative when he lost his balance, slid off the roof and fell approximately thirty feet to the ground, landing on his feet, and then falling forward into and striking his head on a dumpster (N.T. April 19, 1985, 4-10; Reproduced Record 29a-35a).

the premises on which the claimant was working when he was injured (Finding No. 14).

On the following points the referee made no express findings, but the testimony was consistent and uncontradicted. Ken Leah, principal shareholder of Altec, had decided to expand his company's business from conducting inspections to constructing residences. For that purpose, Altec was building two homes to use as models. Leah approached his friend Caldarelli, principal of Caldarelli, Inc., and asked for his assistance in expanding into this new line of work, because Caldarelli had experience in this field. Caldarelli provided various forms of assistance to Leah, including soliciting a painting bid from Dean on the house involved in this case, submitting that bid to Leah, and advising Dean that the bid had been accepted. Leah offered either to pay Caldarelli for his services or to give him an interest in Altec at some future time, but Caldarelli did not accept either offer.

### The Law

Section 302(b) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §462, sets forth the basis of the statutory employer concept, as it relates to the issue of liability for payment of compensation:

> Any employer who permits entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employee or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act.

Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from another person if the latter is primarily liable therefor.

For purposes of this subsection (b) [77 P.S. §462], the term 'contractor' shall have the meaning ascribed in section 105 of this act [77 P.S. §25].

Section 105 of the act, 77 P.S. §25, defines the term "contractor," as follows:

The term 'contractor,' as used in article two, section two hundred and three, and article three, section three hundred and two (b), shall not include a contractor engaged in an independent business, other than that of supplying laborers or assistants, in which he serves persons other than the employer in whose service the injury occurs, but shall include a subcontractor to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken.

As Caldarelli correctly notes in his brief, the clear intent of section 302(b) is to hold a general contractor secondarily liable for injuries to the employees of a subcontractor, where the subcontractor primarily liable has failed to secure benefits with insurance or self-insurance (or to hold a subcontractor secondarily liable in relation to a subsubcontractor). *Ace Tire Company v. Workmen's Compensation Appeal Board (Hand)*, 101 Pa. Commonwealth Ct. 186, 515 A.2d 1020 (1986), petition for allowance of appeal denied, 515 Pa. 610, 529 A.2d 1083 (1987).

This court has held previously that five elements must be shown in order to establish that a given party is a statutory employer of a claimant for the purposes of section 302(b):

Although the meaning of 'statutory employer' under section 302(b) of the Act, 77 P.S. §462, has not itself been interpreted, our Supreme Court has construed similar language in Section 203 of the Act, 77 P.S. §52, and has required five elements to be shown:

'(1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business intrusted [sic] to such subcontractor. (5) An employee of such subcontractor.'

. . . . Furthermore, *actual* control must be demonstrated and a showing that there was simply a *right* to control is insufficient. . . . We agree with the referee and the parties that these criteria are equally applicable to Section 302(b), 77 P.S. §462.

*Wright Demolition* & *Excavating Company v. Workmen's Compensation Appeal Board (Manuel)*, 61 Pa. Commonwealth Ct. 479, 483, 434 A.2d 232, 234 (1981) (quoting *McDonald v. Levinson Steel Company*, 302 Pa. 287, 295, 153 A. 424, 426 (1930), in which the Supreme Court adopted these elements as essential to create the relation of statutory employer under section 203 of the Workmen's Compensation Act, 77 P.S. §52, for the purpose of establishing an employer's *immunity* from suits for negligence, citations omitted).

### Disputed Findings

In order to satisfy elements (1), (2) and (3) of the test for statutory employer status, quoted above, the referee had to find a relationship of owner and general contractor between Altec and Caldarelli, respectively, actual

control of the premises by Caldarelli, and a relationship between Caldarelli and Dean of general contractor and subcontractor. The factual findings that the referee made on these points, and that Caldarelli disputes, are as follows:

15. [At the time of the injury] Fred Caldarelli (Fred) was a general contractor with whom Altec had contracted for Fred to perform certain work in the construction of a model home on Altec's premises for Altec.

16. At said time, said premises was under the control of or occupied by Fred.

17. At said time, Fred had subcontracted Dean for the painting work (work).

18. The work was part of Fred's regular business, and Fred entrusted that work to Dean who hired claimant.

19. The work was embraced within the terms of the principal contract between Altec and Fred.

As Caldarelli correctly emphasizes in his brief, this record does not contain evidence that supports the referee's finding that Caldarelli entered into a contract with Dean to provide the painting work. On direct examination on this point, Dean testified as follows:

Q. On this particular job you were working on September 13, 1984, were you a subcontractor?

A. Yes.

Q. To who?

A. I was working with the Altec Corporation.

THE REFEREE: Who did you subcontract from?

THE WITNESS: Well, when I was approached about doing the job, Mr. Caldarelli,

who I really didn't know but I thought he was a partner, brought me a plan for a house to bid on in approximately May or June of that year. I worked up a bid and turned it back to Fred—

BY MR. SCHMITT: Q. Fred who?

A. Fred Caldarelli. (Continuing)—what we were going to paint and that. In November, he called and notified me that they wanted me to do that job.

THE REFEREE: *For whom?*

THE WITNESS: *For Altec Company.*

THE REFEREE: *That's what I asked you, did you subcontract from Altec?*

THE WITNESS: *Yes.*

BY MR. SCHMITT: Q. Was there a written contract?

A. No, there was no written contract.

Q. Who was going to pay you?

A. Altec.

Q. Do you know who the principals are of Altec?

A. The owners?

Q. Yes.

A. I thought Ken Leah.

(N.T. March 4, 1986, 27-28; Reproduced Record 82a-83a, emphasis added.)

During redirect examination the following exchange took place between Mr. Dean and the referee:

THE REFEREE: For the limited time you were on this particular job, you said nobody paid you anything?

THE WITNESS: No.

THE REFEREE: Did you ever ask for payment?

THE WITNESS: There was no billing.

THE REFEREE: If you had, who would you have billed?

THE WITNESS: Altec, I guess.

THE REFEREE: Was it your expectation, had you continued to do some more work to be paid by Altec? Was that your expectation?

THE WITNESS: Yes.

THE REFEREE: What lead you to believe you'd be paid by Altec?

THE WITNESS: Well, it seemed to be the name of the company. *I knew it wasn't Caldarelli Home, Inc.* He [Caldarelli] and Ken [Leah] apparently had this company name called Altec. And I would bill them.

(N.T. March 4, 1986, 50-51; Reproduced Record 105a-106a, emphasis added.)

In addition, Caldarelli testified that Dean was working for Altec as a contracting painter (N.T. March 4, 1986, 63; Reproduced Record 118a), and Leah testified that Altec would have paid Dean had he completed the job, and that he, Leah, was ultimately in charge of building the house (N.T. March 4, 1986, 87; Reproduced Record 142a).

Because the record contains no other evidence to identify Caldarelli as a general contractor, we hold that the referee's finding that Caldarelli contracted with Dean for the painting work was not supported by substantial evidence. Because Dean did not subcontract this work from Caldarelli, Caldarelli is not a statutory employer as to Dean's employee.

## Statutory Employer Status of Caldarelli or Altec

Because the evidence does not support a finding of a contract between Caldarelli and Dean, the conclusion is inescapable that there was a contract between Dean and Altec. The existence of a contract between Dean and Altec, the owner of the house, negates the third element of the test for statutory employer status quoted

above. It also makes pertinent a principle found in *McDonald v. Levinson Steel Company.* In that case, Levinson Steel, a company in the business of erecting steel buildings, was erecting a steel crane shed for its own occupancy on land on which it had a long-term lease. Levinson Steel contracted with Uhl for the construction of the steel work, and with others for the concrete piers and roofing. An employee of Uhl was injured while working on the steel structure due to the breaking of a concrete pier. The injured employee brought an action in negligence against Levinson, and Levinson sought to assert statutory employer immunity as a defense to common law liability for damages.

After setting out the test for statutory employer status quoted above, the court, in *McDonald* at 295, 152 A. at 427, stated:

> An owner in erecting his own building, does so as an owner, not as a principal contractor or its synonym, 'employer,' although his regular course of business may be that of builder. . . .[3]

---

[3] The opinion provided an example as follows:

For illustration, suppose X, the owner of property, personally undertakes the erection of a building, as Levinson did, letting parts of the work to A and B; X does the rest of the work; A sublets part of his work to C. Reading this situation into section 203, the contracts made with A and B are independent and A and B are independent contractors . . . . As to the premises, so much of X's premises necessary for the successful accomplishment of A and B's work are in the occupancy and under the control of A and B . . . , X does part of the work on the premises with them, but this does not take occupancy and control from A and B. As to his own employees, X is an employer under other sections of the act, but his relation to A, B and C would be the same as the relation of the contractors on the job to each other . . . . As to B's employees, X is not a statutory employer, but is liable at common law . . . . As to the employees of C, a subcontractor, X is not a statutory

In the present case, an owner, Altec, was constructing a house. The owner contracted with a painter, Dean, for some of the painting work. Under *Levinson Steel Company*, the painter is an independent contractor, and the owner is not a statutory employer, subject to workers' compensation liability, as to the independent contractor's employee; the owner is, however, subject to an action by the employee at common law, and he will be subject to any liability at common law that the employee can prove.[4]

Therefore, we reverse the decision of the Workmen's Compensation Appeal Board holding that Fred Caldarelli was liable as statutory employer to Ronald R. Mastromonaco.

## ORDER

NOW, May 4, 1988, the order of the Workmen's Compensation Appeal Board, No. A-91767, dated May 29, 1987, is reversed.

---

employer but is liable at common law; but A is liable as a statutory employer. . . .
*McDonald,* 302 Pa. at 296 Note, 153 A. at 427 n.2 (citations omitted and emphasis added).

[4] Although we do not, of course, presume to rule upon the timeliness of the employee's common law action if brought now, some three and a half years after the injury, we note that 42 Pa. C. S. §5536 provides for a twelve-year period of limitation for civil actions or proceedings "brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property" for "[a]ny deficiency in the design, planning, supervision or observation of construction or construction of the improvement" including "[i]njury to the person or for wrongful death arising out of any such deficiency."