604 A.2d 1109

**Thomas M. McGRAIL, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (COUNTY of LACKAWANNA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 16, 1991.

Decided Feb. 20, 1992.

596

Edwin T. Abrahamsen, for petitioner.

John R. O'Brien, for respondent County of Lackawanna.

Sean P. McDonough, for respondent A.C. Electric, Inc.

Before CRAIG, President Judge, COLINS, J., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Thomas M. McGrail (Claimant) petitions this Court to review an order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision denying his October 14, 1988 claim petition. We reverse.

Employed as an electrician-laborer for A.C. Electric, Inc. (ACE), Claimant was badly burned while engaged in electrical work at the County of Lackawanna's (Lackawanna) Fourth of July Festival, held at the Montage Mountain Ski Resort (Montage). Further relevant facts are as follows:

12. In the years 1985, 1986, 1987 and 1988, a special public event festival was held to celebrate the Fourth of July, and give to the public a form of entertainment, goodwill, and public relations in celebrating this National event.

13. A group of volunteers, made up basically from officials of the ... County government, together with private entrepreneurs formed a committee to run the event.

14. Lackawanna County sanctioned the Volunteer Committee to have the Fourth of July event and contributed sources of money to underwrite part of the costs as seed money, with the expectation of repayment, if any available, from the proceeds of the event.

Findings of Fact Nos. 12–14.

## I. THE STATUTORY EMPLOYER QUESTION

This is a case involving a statutory employer issue. We note at the outset, however, that it is not within the stereotype, represented by such cases as our Supreme Court's decision in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), and its progeny. In those cases, you have simply an owner, who has work to be done on his premises and hires a general contractor to perform such work; the general contractor then apportions out to each of the subcontractors that part of the work which calls for the expertise and type of service offered by the individual subcontractors. It is in this context that the Pennsylvania Legislature demonstrated its intent to include safeguards within the Workmen's Compensation system which would provide a source for funding benefits to an injured worker of an uninsured and financially irresponsible subcontractor under The Pennsylvania Workmen's Compensation Act (Act).[1]

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031; *Qualp v. James Stewart Co.,* 266 Pa. 502, 109 A. 780 (1920). In *Dume v. Eklcom Co.,* 368 Pa.Superior Ct. 280, 284–5, 533 A.2d 1063, 1065 (1987), the court stated:
 Our legislature expressly provided for the concept of a statutory employer in an effort to clarify the liability of those employers who would be responsible under the auspices of the Act. *Qualp v. James Stewart Co.,* 266 Pa. 502, 109 A. 780 (1920). Under the guidelines set forth by the legislature, an employee covered by workmen's compensation surrenders his right to any other form of damages against his statutory employer. 77 P.S. § 481; *Colloi v. Philadelphia Electric Co.,* 332 Pa.Super. 284, 481 A.2d 616 (1984) ...

To implement this intent, Section 302(b) of the Act, 77 P.S. § 462,[2] contains a clause which provides that if the immediate employer of the injured worker has not provided insurance coverage or is not a qualified self-insurer, thus providing necessary safeguards to insure payment of benefits, the employer next up the ladder from the immediate employer, usually the general contractor, for failing to require adequate financial responsibility by insurance or self-insurance of his subcontractor, becomes liable to pay benefits due the injured employee. Such an employer, having usually insured his own employees, but having failed to make certain that his subcontractor's employees are adequately covered for liability payments, pays the price, or his insurer instead pays the price, for failure of such a general contractor to require its subcontractor to provide the necessary financial responsibility to pay for injuries suffered in performing part of the general contractor's work. Section 302(b) of the Act, 77 P.S. § 462, sets forth the Legislature's basis for such a statutory employer status in workmen's compensation cases as follows:

Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act. Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary ex-

2. We must note that in *Dume* and in almost all of the decisions addressing the "statutory employer" issue, the courts were concerned with Section 203 of the Act, 77 P.S. § 52, and not Section 302(b), the former of which deals with the question of immunity of the employer in tort cases, which, of course, is not the issue here. The difference in the mission of Section 203 and 302(b) is dealt with later in this opinion.

penses from another person if the latter is primarily liable therefor.

Section 203 of Article II of the Act,[3] as noted, has to do with tortious liabilities, but also contains a statutory employer provision. In decisions of our courts under Section 203, certain similarities in the two sections, Sections 203 and 302(b) of the Act, have been discussed. Thus, in *Caldarelli v. Workmen's Compensation Appeal Board (Mastromonaco)*, 115 Pa.Commonwealth Ct. 611, 542 A.2d 181, *petition for allowance of appeal denied*, 520 Pa. 592, 551 A.2d 218 (1988),[4] we enunciated the five conditions for establishing statutory employer status laid down in *McDonald* as follows:

> Although the meaning of 'statutory employer' under Section 302(b) of the Act, 77 P.S. § 462, has not itself been interpreted, our Supreme Court has construed similar language in Section 203 of the Act, 77 P.S. § 52, and has required five elements to be shown:
>
> '(1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business intrusted [sic] to such subcontractor. (5) An employee of such subcontractor.'

*Caldarelli*, 115 Pa.Commonwealth Ct. at 616, 542 A.2d at 183.

Obviously, this case does not fit neatly into the more customary setting for application of the five criteria for establishing a statutory employer-statutory employee relationship; the difference is that while Section 203 contains the same statutory employer immunity provision extending it to the statutory employer in negligence cases as is provided in the workmen's compensation cases under Sec-

**3.** 77 P.S. § 52.

**4.** In *Caldarelli*, we were dealing with an immunity issue and applied the elements under Section 203 of the Act as expounded in *McDonald v. Levinson Steel Co.*, 302 Pa. at 295, 153 A. at 426. *See also Nineteen North, Inc. v. Workmen's Compensation Appeal Board*, 48 Pa.Commonwealth Ct. 208, 409 A.2d 503 (1979).

tion 302(b), Section 302(b) has a more vital mission: to provide security for payment of benefits in workmen's compensation cases. *See Holland v. Norristown State Hospital,* 136 Pa.Commonwealth Ct. 655, 584 A.2d 1056 (1990).

The following designated findings, insofar as they are factual findings, present substantially the background of this case:

6. On July 5, 1988, at the direction of Mr. Cummings, A. C. Electric, claimant's employer, [5] claimant was at the Montage site to meet with his employer. Claimant waited at the site for approximately two (2) hours, and on three (3) occasions attempted to contact him but was unsuccessful. Claimant then spoke to Mr. Brazil [sic][6], a supervisor for the County ...,[7] and asked if he had seen Mr. Cummings. Mr. Brazil indicated that he had not and then inquired what claimant was supposed to be doing that day. Claimant informed Mr. Brazil that he was to take down the temporary wiring for the stage today, and Mr. Brazil inquired whether he had tools and allen wrenches. When claimant indicated that he did, Mr. Brazil stated that claimant should come with him to see what he could do to help him. They proceeded to one of the Montage buildings where the power source was located. Mr. Brazil indicated to the claimant to remove the wires from the breaker and upon completion of that, indicated that claimant should take a plate and cover a space where a previous breaker had been removed. While attempting to do so, the plate slipped and a phase-out occurred resulting in both claimant and Mr. Brazil receiving burns. Claimant received burns to his hands, arms, biceps, neck and face and a small area of his left shoulder. As a result, claimant was taken to Community Medical Center hospi-

---

5. Since *A.C. Electric* and *Cummings* are one and the same, Claimant's employer will sometimes be named hereafter as the immediate employer.

6. Apparently the correct spelling of the Lackawanna County official's name is Brozil.

7. The deletion is not factual.

tal and from there, flown to the Lehigh Valley Hospital Burn Center in Allentown, Pennsylvania. Claimant remained hospitalized at the Lehigh Valley Burn Center for approximately nineteen (19) days and received daily baths and debridement of his burned skin until his release.

7. Frank Brazil, Assistant Director of Public Service for defendant, County ..., was in charge of setting up the tents with electrical power and setting up tables, etc. under said tents. ....[8] Mr. Brazil took part in the planning for the festival and as such oversaw the setting up and maintenance at the festival site.

Findings of Fact Nos. 6–7 (footnotes added).

The Board, on appeal to it, stated:

From that [electrical] box A.C. Electric had run a line to provide power to the stage. On July 5, 1988, the Claimant, *while acting in the course of his employment for A.C. Electric,* removed the wire, and he then attempted to take a plate and cover a space where a previous breaker had been removed. While attempting to do so, the plate slipped and a phase-out occurred, causing burns to the Claimant.

It was the Claimant's contention he was a statutory employee of the Defendant County of Lackawanna as his actual employer had no insurance. In dismissing the petition, the Referee made the following pertinent Finding of Fact:

24. This Referee finds that:

(a) Lackawanna County did not have actual control over the premises where claimant was injured, (that is the maintenance building and power source for Montage).

(b) There was no contract between Montage and Lackawanna County as to control of the premises.

(c) At the time the festival was conducted on the Montage site, Montage conducted its regular business operating the water slides, club house, dining facilities

8. R.R. 152a, 165a, 193a.

and operated a beer tent under their Liquor License for sale of beverages to the general public, and had control over the general area of the premises, especially its maintenance building where the power source was located.

(d) A.C. Electric was not entrusted to any of Lackawanna County's regular business.

Based upon the above Finding of Fact the Referee concluded as a matter of law that the Claimant was not a statutory employee of Lackawanna County. We agree with the Referee. There are five requirements which must be met if a Claimant is to prove he is a statutory employee. They are as follows: (1.) an employer under contract with the owner or one in position of the owner; (2.) premises occupied by or under control of the employer; (3.) a subcontract made by such employer; (4.) part of the employer's regular business is entrusted to such subcontractor; (5.) the Claimant is an employee of such subcontractor. *Nineteen North Inc. v. Workmen's Compensation Appeal Board*, [48 Pa.Commonwealth Ct. 208,] 409 A.2d 503 (1979). In the instant case the Referee's Findings of Fact support the legal conclusion the Claimant was not a statutory employee as the County did not have control of the premises on which the accident occurred and electrical work which was being performed by the Claimant was not part of the County's 'regular business'. [Item 4] It is apparent the Referee has made no error of law and his crucial Findings of Fact are supported by competent evidence. For the reasons cited above the Defendant Lackawanna County was not a statutory employer of the Claimant ...

Board's opinion, R.R. 29a—31a (emphasis added).

We must disagree with the conclusions of the Board, but will examine the question of the possible application here of the *McDonald* guidelines as set forth by the Board. In *Dume,* the Superior Court wrote:

In *Qualp,* [our Supreme] [C]ourt stated:

The legislature wanted to definitely fix some responsible party with the obligation of paying compensation to injured workmen, and the party selected was the first whose duty it was to assume control of the work. It selected the first in succession from the owner, believing the owner would contract with none but responsible persons. He was the first in the field and in the contracting scheme of work, the head of the endeavor, the person to whom an employee would naturally look.... The act intended to throw the burden on the man who secured the original contract from the owner to the end that employees of any degree doing work thereunder might always be protected in compensation claims.

266 Pa. at 509, 109 A. at 782. In holding that no immediate contractual relationship with the general contractor was required, the court proclaimed:

*The act did not intend to limit the "hiring a laborer" to a "contractor" standing in immediate contractual relation with the employer (original contractor);* it intended to include those laborers or employees who did work in furtherance of the employer's business, who were employed by any one having a lawful right or duty to engage in the business undertaking by the employer....

*Id.*, 266 Pa. at 508, 109 A. at 781 (emphasis added). Thus, the Qualp holding, which remains the law of Pennsylvania today, enunciates that privity of contract is not required between the general contractor and the actual employer of the injured workman for purposes of liability for workmen's compensation benefits.

*Dume*, 368 Pa.Superior Ct. at 286–7, 533 A.2d at 1066–7.

Likewise in *Dume*, again relying upon *Qualp*, the Superior Court stated:

Since the existence of a contractual relationship is *not* a prerequisite to a general contractor's obligation to provide workmen's compensation benefits, it reasonably follows that no contractual relationship need exist between the general contractor and the subcontractor in order for

the general contractor to enjoy common law tort immunity under the Act. Mosites, as general contractor, retained secondary or contingent liability for worker's compensation benefits due the appellant and, conversely, enjoyed the privilege of common law tort immunity afforded by the Act. Accordingly, appellant's contention that a direct contractual relationship necessarily exist between the general contractor and a subcontractor in order for tort immunity to subsist is meritless.

*Dume*, 368 Pa.Superior Ct. at 289–90, 533 A.2d at 1068 (emphasis in original).

While comparisons have been made by our Courts, analogizing Section 302(b) with rulings on the language of Section 203, the Supreme Court has warned that the restrictive rules in negligence or tort cases (*e.g.*, Section 203) must not be applied in workmen's compensation cases.

Thus, in *Cudo v. Hallstead Foundry, Inc.*, 517 Pa. 553, 559, 539 A.2d 792, 794–5 (1988), our Supreme Court stated:

The law is well settled in this Commonwealth that rules of procedure are relaxed in workmen's compensation cases. See, e.g. *Lako v. Schlessinger*, 208 Pa.Super. 85, 220 A.2d 665 (1966). Hence, the rules of review which are employed by the courts should not be transplanted wholesale to procedures before the Board.

## CONTROL BY LACKAWANNA—REGULAR BUSINESS

The Board approved the referee's item (a) of Finding of Fact No. 24:

that Lackawanna had no 'actual control' of the premises ... and the referee's item (d) that Claimant's work when injured was not part of the 'regular business' of Lackawanna. Section 302(b), 77 P.S. § 462(b).

Board's opinion, R.R. 30a.

We find no support in the record for either conclusion. The second of these two items will be examined hereafter.

The referee and the Board seem to have found a lack or deficiency in "actual control" by Lackawanna; whereas,

the meaning of language in Section 302(b), which is solely being addressed here, simply provides that there must be occupancy *or* control.[9] Also, it must be remembered that Section 302(b) simply provides that "any employer who *permits* the entry upon premises occupied by him *or* under his control of a laborer or an assistant hired by an *employe* or *contractor*, ... shall be liable for the payment of compensation to such laborer or assistant unless such hiring employer or contractor ... has secured the payment thereof as provided for in this act...."[10] (Emphasis added.)

 There is ample support for the finding that the work which Claimant performed when injured was under the supervision of Mr. Brozil and was under his direction. For example, Frank Brozil, a qualified electrician and Assistant Director of Public Service for Lackawanna, testified:

Q. Whose decision was it to go down into the panel room?

A. Well, he came to me saying he wanted to—he was waiting for Joe. He said he was waiting for two hours. He said, 'we're supposed to disconnect service to the stage.' Then I asked him if he wants to go down and do it. And we went down and did it. I showed him what had to be done and he went down the ...

. . . .

Q. So you told him to take the wires off?

A. Off the breaker, yes. He took the ground wire off. Then I asked him to put the plate on too.

Q. Who asked him to put the plate on?

A. I did. I said, 'While you're here, put that plate on.'

Q. And that's what actually caused the accident, right?

A. Yes.

9. We do not reach the question of whether the similarities in Sections 203 and 302(b) should be considered where immunity is not in issue.

10. Section 302(b) of the Act, 77 P.S. § 462 (emphasis added).

. . . .

Q. Would it be fair to say that you were there in a supervisory capacity as *far as the County was concerned?*

A. As a volunteer, yeah.

Q. Now when you say as a volunteer ...

A. I mean the four days, while it was going on.

. . . .

Q. Are you a salaried employee or an hourly employee?

A. Salary.

The Referee:

Well, someone—were they running it on behalf of the County of Lackawanna?

The Witness:

Yes.

The Referee:

Well, did they have authority to do so?

The Witness:

Yes, they did.

The Referee:

So it had to come from the county commissioners?

The Witness:

I would say, yes.

R.R. 157a—160a, 188a—189a. (Emphasis added.)

Mr. Rizzi, Lackawanna's Director of Community Affairs, testified as follows:

Q. And Mr. Brozil said that this was the fourth or fifth year in a row that the County had sponsored such a festival. Is that your knowledge also?

A. Generally, yes.

Q. Were the all, the festivals, at Montage?

A. Well, we participated in one with the City in 1984, that was at NAORG (ph) and everyone after that then was at Montage.

Q. Starting with 1985?

A. Right.

Q. So this would have been the fourth ...

A. That's right.

Q. ... Fourth of July festival at Montage sponsored by the County, is that right?

A. Right.

Q. Apparently by that time, in 1988, had become a regular annual event for the County to sponsor, is that right?

A. Well, it had—yes, I think so. It was a special event, but I think that it became customary.

R.R. 203a—204a.

Q. You indicated that there is a figure in the budget for what you call Fourth of July activities.[11] Is that a correct way of identifying what the budget figure might have been designated for, activities?

A. I think it was just listed as Fourth of July and would have left up on a yearly basis to decide how to spend it.

Q. And who would make a decision as to how, you know, what particular method would be used to spend that money?

A. Well, during the particular years that this festival operated, this committee basically suggested a plan and announced it and if it wasn't met with strong opposition then we did our best to carry it out.

R.R. 220a—221a (footnote added).

The Witness:

11. Mr. Rizzi testified as follows:
A. Well, I think that the operating budget for the festival was somewhere around $50,000.00 by the '88 year.
Q. Okay. That was something that was written into the budget by the County commissioners?
A. Well, I think that approximately $20,000.00 was put into the budget and the rest of it was spent with the expectation that it would be partially replenished by those proceeds that the County retained.
R.R. 207a—208a.

I think that it was a *regular part of the County business* to have some public activity on the Fourth of July.

. . . .

The Referee:

Wouldn't that be part of the regular course of the County business that you had it five years in a row?

The Witness:

It became that, yes.

The Referee:

It became that? So on July 5th of 1988, it was one of the regular course of the County functional businesses, right?

R.R. 225a (emphasis added).

Mr. Rizzi, noting that Lackawanna's authority for the festival came from the county commissioners, stated further:

The Referee:

As workers on the site? This festivity, would that be considered a County festivity? Would you consider it a County festivity?

The Witness:

Basically, yes.

. . . .

The Referee:

So generally you had pretty much general control over the premises which was occupied and used by the County for this festival?

The Witness:

I think that we had general control over specific areas.

R.R. 227a, 237a.

Thus, it is clear from the above testimony, and from the record, that Claimant was carrying out part of the "regular business" of Lackawanna County in setting up and dismantling the Fourth of July decor; in fact, Brozil was the

County manager on the site on which Claimant's immediate employer, Mr. Cummings, performed as a subcontractor for Lackawanna in the Fourth of July festivities. Indeed, the work of Cummings and his company, on prior occasions, and particularly on this occasion,[12] was furthered by Claimant responding to the instructions of the authorized county official, Mr. Brozil, Assistant Director of Public Service for the defendant, Lackawanna County, who was in charge of setting up and dismantling the festival facilities, and who took part in the planning for the festival and as such oversaw Lackawanna's plans for the setting up and the maintenance of the festival site.

## THE CONTRACT REQUIREMENT

■ The referee and Board seem to have been persuaded from the course that would best implement the Legislature's intent by attaching excess significance to the failure of a contract, the first of the five criteria. This, in itself, was error. *Dume.*

ACE clearly was a subcontractor of the County, Item (1) of the elements noted in *Caldarelli*, even though ACE served without a written contract in this case.[13] Moreover, Mr. Cummings testified that he had on prior occasions performed electrical work for the County; and although Mr. Cummings was evasive about being paid for the work he had just done for Lackawanna, he testified that he expected to be paid for at least part of these electrical services. The record establishes that the only reason why ACE had not yet been paid was because ACE had not billed for its work. R.R. 256a—257a, 262a, 265a.

## THE "REGULAR BUSINESS" OF LACKAWANNA

■ There is no question that this criterion is met here, requiring that the work of the statutory employer be part of the "employer's *regular business* entrusted to that em-

12. Finding of Fact No. 9.

13. *See* discussion earlier in this opinion establishing no need for a formal contract.

ploye or contractor."[14] Such festivals given by municipalities, particularly where, as here, profit is to be derived from the performance thereof, is part of the "regular business" of such municipalities which supply this form of festival or holiday entertainment for the benefit of their citizens. The record supports this conclusion.[15]

## THE CLAIMANT AS AN EMPLOYEE OF THE ELECTRICAL SUBCONTRACTOR

We come now to the fifth of the criteria, and find that Cummings admittedly is the immediate employer of Claimant and find that the Claimant has the legally required status both as an employee of ACE and as statutory employee of the County itself. While Cummings in his blatantly self-serving testimony seeks to disqualify his employee from receiving the benefits of the workmen's compensation laws by designating him as a violator of orders,[16] we find no support for this in the circumstances which actually transpired. *See* Findings of Fact Nos. 6–7.

First of all, as to this issue raised by ACE, the immediate Employer, Claimant was actually injured while carrying out the instructions of the supervisor of the festival to "replace and cover a space where a *previous breaker* had been removed." Finding of Fact No. 6 (emphasis added). This finding includes the statement: "[W]hile attempting to do so the plate slipped and a phase out occurred." *Id.*

This accidental injury suffered by Claimant occurred when he was performing an act which had no requirement

14. Section 302(b) of the Act, 77 P.S. § 462 (emphasis added).

15. Mr. Rizzi, quoted earlier in this opinion, testified as follows:
 The Referee:
 As workers on the site? This festivity, would that be considered a County festivity? Would you consider it a County festivity?
 The Witness:
 Basically, yes.
 R.R. 227a.

16. Mr. Cummings alleged admonition to Claimant to stay clear of the electrical equipment involved was represented as a safety measure rather than a challenge to Claimant's employment status.

for electrical expertise; he was simply carrying out an instruction from Brozil to replace a plate which had previously been removed. Since Claimant's employer, Cummings, failed to show up and the supervisor of all the work, including that of ACE, sought assistance in replacing this plate in the time-consuming absence of Cummings, who had directed Claimant to be there, Claimant proceeded to carry out what was obviously the work of his employer under the agreement with County officials. In light of the fact that our Courts have consistently held that the compensation part of the Workmen's Compensation System must be liberally construed in favor of the Claimant, it would be error indeed to impose upon a workmen's compensation claimant technicalities which unnecessarily lead to defeat of the worker's rights.

Furthermore, employment by ACE, the immediate employer, is otherwise not contested and cannot be a defense here on the basis of violation of employer instructions. Of course, it must be remembered that the provision that permits a disallowance for the violation of statutory constraints contained in Section 301(a) of the Act, 77 P.S. § 431, is preceded in that section by the provision that such compensation shall be paid in all cases by the employer, *without regard to negligence*, but that benefits may be denied if a Claimant's injury is "caused by the employe's violation of law, but the burden of proof of such fact shall be upon employer. . . ." Section 301(a) of the Act, 77 P.S. § 431.

Here, Claimant's mishap amounted, at most, to mere negligence, causing the injury, and this, of course, may not deprive him of benefits under the workmen's compensation laws. Furthermore, the Legislature has specifically limited relief from payment of benefits to only those cases of injuries that are "caused by the employe's *violation of law.*" Section 301(a) of the Act, 77 P.S. § 431 (emphasis added). Generally, the cases allowing this breach of the employer-employee relationship have been those in which *statutes* have prohibited and made criminal the conduct

which caused the injuries.[17] Also, the injury must be caus-
ally related to the so-called "violation by the employe," with
a heavy burden on the employer to prove such a severance
of the employer-employe relationship.[18] It borders on the
absurd to apply such severance to a case like the instant
one where Claimant was required to be on the premises
and, indeed, waited thereon for two hours for his employer
to join him on premises where his employer instructed him
to be.

## II. THE DISFIGUREMENT AWARD

■ Finally, we must remand, in view of the referee's
finding of work-related, permanent disfigurement suffered
by Claimant, for evaluation by the referee of benefits
payable to Claimant under Section 306(c, d)(22) of the Act,
77 P.S. § 513(22). The following appears of record:

Mr. Abrahamsen:

No. Two more things for the record. One is the
Claimant returned to work, since our last hearing,
returned to work at wages equal to or greater than he
was earning at the time he was hurt, effective Febru-
ary 17th, 1989. Returned to work for A.C. Electric.
And secondly, and lastly, Referee, Dr. Okonski in his
deposition indicated that there are three areas of facial
scarring which are permanent on the Claimant, left
forehead, left cheek and left ear. If the Referee would
want to take a look at those three areas at this time?

The Referee:

Did he describe the scars on the—do you know if he
described them in his deposition or not?

17. The older mining cases are examples, but aside from these, forfei-
tures of the employer-employee relationship is rare. *See, e.g., Copello
v. New Shawmut Mining Co.,* 179 Pa.Superior Ct. 227, 116 A.2d 104
(1955) and *Sand v. Metropolitan Life Insurance Co.,* 138 Pa.Superior
Ct. 218, 10 A.2d 820 (1939) (violation constituting a minor misdemean-
or not sufficient). This class of cases require more than violation of
an employer's rule. *Abbotts Dairies v. Workmen's Compensation Ap-
peal Board,* 38 Pa.Commonwealth Ct. 423, 393 A.2d 517 (1978).

18. The violation must be the proximate cause of the injury. *Walker v.
Nu–Car Carriers, Inc.,* 164 Pa.Superior Ct. 246, 63 A.2d 484 (1949).

Mr. Abrahamsen:

He described them. Yes, he did describe them. It's over—yeah, on the left. This side over here. Here, here, and his ear. Above the eye, under the eye and his ear.

The Referee:

Well, at an approximate distance of 15 feet—keep looking over that way—it appears to be clearly visible a scarring of the left ear completely around the entire lobe into the indentation with reddish discoloration. It appears to be some type of veins distended on the ear lobe, the outside of the ear lobe. It's also that's clearly visible a irregular shaped reddish discoloration approximately two inches long by a half inch at the left of his temple, left temple, about the eye level, and below the eye a reddish discoloration, irregular in shape. It's I would say, between the cheek and the nose. That describes what's visible to the Referee at this distance. And since the incident occurred on July 5th of 1988, *the same are considered as permanent.* Is there any objections to the way it was described? I used the doctor's description in addition to it.

R.R. 249a—251a (emphasis added).

Accordingly, since the record requires our holding that Lackawanna was in the status of statutory employer as a matter of law, the Fourth of July Festival being clearly a part of County business, we must reverse and will also remand for the computation of disfigurement benefits.

ORDER

AND NOW, 20th day of February, 1992, the order of the Workmen's Compensation Appeal Board dated March 11, 1991, as of No. A90–68, is hereby reversed and this case is remanded for computation of benefits payable to Claimant for his disability and for evaluation and computation of

benefits due for disfigurement under Section 306(c, d)(22) of The Pennsylvania Workmen's Compensation Act.

Jurisdiction is relinquished.