**Martin VANDERVORT, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 16, 2005.

Decided May 23, 2006.

---

Christopher D. Gasda, Elkins Park, for petitioner.

Martin G. Malloy, Philadelphia, for respondent.

BEFORE: PELLEGRINI, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN JUBELIRER.

Martin Vandervort (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which reversed the decision of the Workers' Compensation Judge (WCJ), granting Claimant's Joinder Petition against the City of Philadelphia (City). At issue is the Board's finding that the City is not Claimant's statutory employer under Section 302(b) of the Workers' Compensation Act (Act),[1] and the Board's application of its standard of review.

Claimant was employed as a laborer for East Coast Demolition (East Coast). On May 11, 2001, Claimant was assisting in a demolition project in South Philadelphia, which East Coast was performing for the City, when he was injured by a floor board that "sprang up suddenly, hitting Claimant in the face." (Findings of Fact (FOF) ¶ 17B.) The impact knocked Claimant onto his back and sent a sharp piece of wood into his right eye. As a result of the accident, Claimant lost all vision in his right eye. (FOF ¶ 17C.) Claimant later treated with an ear, nose and throat specialist, who diagnosed Claimant with hear-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 462.

ing loss in both ears. (FOF ¶ 17D.) Claimant currently is being treated by a psychiatrist for anxiety, depression and post traumatic stress disorder related to the work accident. (FOF ¶ 17E.)

Claimant filed a Claim Petition, Penalty Petition, and two Joinder Petitions. At issue in this appeal is the April 24, 2003 Joinder Petition which Claimant filed against the City. Therein, Claimant sought ongoing indemnity and medical benefits pursuant to Section 302(b) of the Act,[2] arguing that the City was Claimant's statutory employer at the time of the work accident. No representative of the City filed an Answer to the Joinder Petition or appeared at any of the scheduled hearings in the matter.[3]

Claimant argues that the City is his statutory employer because of the relationship between the City and East Coast. There is no copy of the original contract in the record; there are only two amendments to the contract.[4] Amendment No. (2) to Contract, dated December 14, 2001, indicates that, pursuant to "Agreement, Bid. No. T1T19920, Contract No. 010747, executed on May 16, 2001, as amended on September 6, 2001," East Coast "agreed to furnish and deliver all materials required to be furnished and delivered, and to perform all the work and labor required to be done and performed in completing the Demolition Project—South Philadelphia as ordered and required by the Department of Licenses and Inspections . . . ." (Ex. C–4, Amendment to Contract.) Amendment No. (1), dated September 6, 2001, expands the scope of the original Contract by adding additional work and increasing the contract by $80,156.38.

The WCJ found Claimant credible and held that: (1) the City entered into a "subcontract" with East Coast under which East Coast agreed to perform certain demolition activities on a project in South Philadelphia; (2) the premises were either occupied or under the control of the City; (3) Claimant was injured while employed by East Coast in its capacity as a subcontractor for the City; and (4) East Coast did not maintain workers' compensation insurance coverage for the subject work injury. Therefore, the WCJ granted, among other things, Claimant's Joinder

---

2. Section 302(b) of the Act states in pertinent part:

Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act. Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from another person if the latter is primarily liable therfor.

77 P.S. 462.

3. Counsel for the City asserts that she was retained on this matter on December 1, 2003, at which time she requested WCJ Goodwin to reopen the record for the following reasons: at the time the Joinder Petition was filed against the City on March 26, 2003, the City "was going through a major change of transferring the files from its former third party administrator, CSI, to its present third party administrator, Ward North America[, and the City] did not receive the Joinder Petition." (City Br. at 3.)

4. Claimant argues in his brief that "the Appeal Board reviewed Claimant's Exhibit "4", the contract between the City of Philadelphia and East Coast Demolition . . . ." (Claimant Br. at 12–13.) However, while the record before this Court contains Claimant's Exhibit 4, that exhibit does not contain the original contract; rather, it contains Amendment's 1 and 2 to the original contract.

Petition finding that the City was Claimant's statutory employer at the time of the work accident because Claimant's credible testimony that he "understood" East Coast to be the subcontractor was corroborated by the "Amended" Contract between the City and East Coast. (FOF ¶ 17J; Ex. C–4.) Thus, the WCJ ordered the City to pay: (1) Claimant's ongoing temporary total disability benefits commencing May 11, 2001 at the weekly rate of $511.33, plus statutory interest on all compensation due and owing; (2) Claimant's ongoing medical and psychological treatment costs for his work injury; (3) Claimant's compensation in the amount of $140,616.66, plus 10% statutory interest, for the specific loss of his right eye; (4) Claimant's compensation for his permanent, bilateral hearing loss; and (5) *quantum meruit* attorneys' fees for Claimant's counsel in the amount of $18,168.00. (WCJ Order.)

City appealed to the Board, which agreed with the City that it was not Claimant's statutory employer. The Board applied the five prong test enunciated in *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 295, 153 A. 424, 426 (1930), for determining whether a party is a statutory employer: (1) the employer (general contractor) must be working under a contract with the premises owner; (2) the premises must be occupied or under the control of the employer (general contractor); (3) the employer (general contractor) has contracted with a subcontractor to do work; (4) part of the employer's regular work is entrusted to the subcontractor; and (5) the injured person is the subcontractor's employee. The Board held that because East Coast was the *general contractor* in the

City's demolition contract, "[t]here is no subcontractor existent in this litigation." (Bd. Op. at 6.) Therefore, Claimant, as a matter of law, was unable to establish that the City is a statutory employer because Claimant could not prove factors 3, 4, and 5 of the *McDonald* test. (Bd. Op. at 6.)

The Board also disagreed with the WCJ's finding of fact 17J that Claimant "understood" East Coast to be the subcontractor. The Board concluded, after a review of the record, that this finding is not supported by the record testimony because the WCJ sustained an objection to the Claimant being asked the question "did you understand that East Coast was a subcontractor on a city demolition project, when you were hired?" and Claimant never answered it. (Bd. Op. at 6; 5/20/03 Test. at 24.) The Board additionally noted that, even if Claimant stated that he "understood" that to be the fact, such a response would be in direct contravention with the language contained in East Coast's contract with the City. (Bd. Op. at 7.) Thus, the Board reversed the WCJ's determination that the City was a statutory employer and, therefore, jointly and severally liable, along with East Coast, for Claimant's compensation benefits. Claimant now petitions this Court for review.

■ On appeal,[5] Claimant argues that the Board erred by: (1) reversing the WCJ's decision determining that the City was Claimant's statutory employer; and (2) applying an incorrect standard of review.

■ Claimant first argues that the Board erred in reversing the WCJ's find-

---

5. Our standard of review is limited to a determination of whether there has been a violation of constitutional rights, whether an error of law has been committed, or whether all necessary findings of fact made by the WCJ are supported by substantial evidence. *Jeanes*

*Hosp. v. Workers' Comp. Appeal Bd. (Hass)*, 582 Pa. 405, 872 A.2d 159 (2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

ing that the City was Claimant's statutory employer. He claims that the Board erroneously relied on the restrictive standards in *McDonald* and, instead, should have relied on the more relaxed standards outlined in *McGrail v. Workmen's Comp. Appeal Bd. (County of Lackawanna)*, 145 Pa.Cmwlth.595, 604 A.2d 1109 (1992), to find that the City is Claimant's statutory employer.

■ The Courts, in *McDonald* and *McGrail*, each apply a different section of the Act involving a "statutory employer." See 77 P.S. §§ 52; 462. Pursuant to these sections, which describe a statutory employer's legal obligations and privileges, certain entities, usually contractors, may be deemed statutory employers because the injured employee's direct employer, the sub-contractor, failed to properly secure workers' compensation insurance. An entity's status as a "statutory employer" results in liability for workers' compensation insurance and, coextensively, provides immunity to the statutory employer from common law tort liability.

The first "statutory employer" provision, Section 203, 77 P.S. § 52, describes the way in which tort liability of an entity found to be a statutory employer is to be analyzed. Section 203 of the Act provides as follows:

> An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, *shall be liable* to such laborer or assistant *in the same manner and to the same extent as to his own employe.*

77 P.S. 52 (emphasis added). Because the workers' compensation system is **the exclusive remedy** for an injured employee seeking redress for a work-related injury from his or her employer, 77 P.S. 481(a), Section 203 confers upon the statutory employer the same immunity from tort liability that a "contractual" or "common law" employer would have. *Peck v. Del. County Bd. of Prison Inspectors*, 572 Pa. 249, 254–55, 814 A.2d 185, 188 (2002).

The second "statutory employer" provision, Section 302(b), describes the way in which to analyze the liability for providing workers' compensation insurance of an entity found to be a statutory employer. This section states, in pertinent part:

> Any employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of such employer's regular business entrusted to that employe or contractor, shall be liable for the payment of compensation to such laborer or assistant unless such hiring employe or contractor, if primarily liable for the payment of such compensation, has secured the payment thereof as provided for in this act. Any employer or his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from another person if the latter is primarily liable therfor.

77 P.S. 462. This section requires the contractor, as the statutory employer, to be responsible for payment of workers' compensation benefits where the sub-contractor, or direct employer of the injured employee, does not have the proper insurance.

The two sections, Section 203, granting immunity from tort liability (tort immunity), and Section 302(b), imposing responsibility for providing workers' compensation insurance benefits (insurer), have been similarly construed over the years. In the

landmark case of *McDonald,* our Supreme Court set forth a five-part test to be utilized in determining whether an entity is a statutory employer: (1) an employer must be under contract with an owner or one in the position of an owner; (2) the premises must be occupied by or under the control of the employer; (3) a subcontract must be made by the employer; (4) part of the employer's regular business must be entrusted to such subcontractor under the contract; and (5) the employee of the subcontractor is injured on the premises. *Id.,* 302 Pa. at 295, 153 A. at 426. In *McDonald,* an injured employee, who had received workmen's compensation benefits from his direct employer, sued the defendant/owner of the premises for negligence. In its defense, the defendant asserted that it was the employee's statutory employer, and was entitled to immunity from suit under Section 203 of the Act. The Supreme Court concluded that the defendant had failed to satisfy the first requirement of the *McDonald* test, that there be a contract between it and the owner of the property, and rejected the defendant's argument, that it operated in a "dual capacity," by holding that an owner cannot contract with itself. The Court stated that Section 302(b) of the Act "merely carries into effect section 203." *Id.,* 302 Pa. at 293, 153 A. at 426.

The *McDonald* test has been utilized over the years to determine whether an entity is a statutory employer under both the tort immunity section (203) and the insurer section (302(b)). However, the Court in *McGrail* analyzed the *McDonald* test in the context of providing benefits to an uninsured employee under the Act and, given the humanitarian purposes of the Act, applied the test less strictly.

In *McGrail,* the issue before the Court was whether, under Section 302(b), an entity was a statutory employer for purposes of providing insurance to an injured employee whose direct employer had not provided workmen's compensation insurance. There, the employee, an electrician-laborer for A.C. Electric, Inc. (ACE), was instructed, by his employer, to go to the Montage Mountain Ski Resort to perform electrical work at the County of Lackawanna's Fourth of July Festival. The employee waited at the Montage site to meet with his employer for nearly two hours and attempted to contact his employer on at least three occasions to no avail. The employee then spoke to Mr. Frank Brazil, a Supervisor and Assistant Director of Public Service for the County, who was in charge of setting up the tent with electrical power, setting up the tables to be placed under the tent, involved in the planning for the festival, and in charge of overseeing the setting up and maintenance of the site. Brazil indicated that he had not seen employee's employer. Brazil then inquired as to what the employee was supposed to be doing that day and instructed the employee to go with him to see what he could do to help Brazil. Brazil instructed the employee to remove wires from a breaker and, upon undertaking that task, the employee received burns to his hands, arms, biceps, neck and face. *Id.* at 1112–13.

This Court noted, at the outset, that the case did not fall within the typical stereotype as represented in cases like *McDonald* wherein:

> you have simply an owner, who has work to be done on his premises and hires a general contractor to perform such work; the general contractor then apportions out to each of the subcontractors that part of the work which calls for the expertise and type of service offered by the individual subcontractors. It is in this context that the Pennsylvania Legislature demonstrated its intent to

include safeguard(s) within the Workmen's Compensation system which would provide a source for funding benefits to an injured worker of an uninsured and financially irresponsible subcontractor.

*McGrail,* 604 A.2d at 1111. This Court noted that, while Section 203 of the Act contains similar language defining a statutory employer as that in Section 302(b) of the Act, *"[s]ection 302(b) has a more vital mission: to provide security for payment of benefits in workmen's compensation cases." Id.* at 1112 (emphasis added).

The *McGrail* Court referred to the elements of the *McDonald* test as mere "criteria" or "guidelines" for establishing statutory employer status because of the difference in purpose between Sections 203 and 302(b) of the Act. *McGrail,* 604 A.2d at 1112, 1114. In doing so, the *McGrail* Court applied a more relaxed standard than that of *McDonald* in equitably finding the County to be employee's statutory employer under Section 302(b) of the Act. The Court concluded that: (1) the County had actual control of the premises because the Fourth of July festivities were a regular part of County business; (2) at the time the employee was injured, he was under the supervision of the County's Supervisor, Mr. Brazil; (3) a written contract was not needed in finding ACE was the subcontractor; and (4) the employee was an employee of ACE. *Id.* at 1115–17.

The *McGrail* Court noted that the intent of the Pennsylvania Legislature in carving out a statutory employer defense under Section 302(b) was based on providing safeguards within the Workers' Compensation system to provide a source for funding benefits to an injured employee of an uninsured and financially irresponsible subcontractor under the Act. *McGrail,* 604 A.2d at 1111. Thus, to insure payment to the injured employee, the employer next in line from the immediate employer, usually the general contractor, becomes liable to pay benefits. This is because the general contractor employer, having insured his own employees, but having *failed* to make certain that his subcontractor's employees are adequately covered with workers' compensation insurance benefits, pays the price, or his insurer pays the price, for failure to require *its selected* subcontractor to provide the necessary financial insurance to pay for injuries suffered in performing part of the general contractor's work. *Id.*

The *McGrail* Court also cautioned that, "[w]hile comparisons have been made by our Courts, analogizing Section 302(b) with rulings on the language of Section 203, the Supreme Court has warned that the restrictive rules in negligence or tort cases (*e.g.,* Section 203) must not be applied in workmen's compensation cases." *Id.* at 1114. The intent underlying Section 302(b) is to protect the injured employee by providing him a "sword" in securing payment of workers' compensation benefits when the primary employer fails to provide workers' compensation insurance, while Section 203 of the Act acts as a "shield" for the employer from tort liability. Therefore, we agree with Claimant that, under *McGrail,* we should apply the *McDonald* guidelines in a manner reflecting the humanitarian purposes of the Act when determining if an entity is a statutory employer under Section 302(b) of the Act. However, our analysis does not end there.

When we apply the *McGrail* analysis to the record before us, we conclude that Claimant did not meet his burden of proving that the City is Claimant's statutory employer. Crucial to the Court's finding of statutory employer liability in *McGrail* was the fact that hosting the annual holi-

day festival was a part of the County's "regular business." In contrast, here, there is no evidence as to why the City hired East Coast for the demolition or whether the demolition project was a regular occurrence. The contract, dated May 16, 2001 between the City and East Coast, is not in the record. The only documents in the record are the amendments to the Contract, dated September 6, 2001 and December 13, 2001, which increases the contract by $80,156.38 for additional work and assigns its interest in the Work Contract to another entity, but in no way provides any indication of the City's relationship to the project or to East Coast. Additionally, unlike *McGrail*, where the county's employee, Mr. Brazil, possessed "actual control" over the work site by directly "supervising and directing" the employee to undertake dangerous tasks which led to the employee's injury, here, there is no evidence that any City employees were on-site, involved in the work, or had any control over the property. Not only is there no evidence of the City's involvement, but there is also no evidence of whether the City was the contractor or merely the owner of the buildings. *See Peck v. Delaware County Bd. of Prison Inspectors*, 765 A.2d 1190 (Pa.Cmwlth. 2001) (finding that an owner charged with the care, custody and control of a facility cannot be a statutory employer under the Act); *see also, Brooks v. Buckley & Banks*, 291 Pa. 1, 139 A. 379 (1927) (finding that a city, which employs people to clean its streets, is an employer as to its own employees, but as to its contractor's employees, it acts only as an *owner* and not a statutory employer).

We are mindful that the City failed to attend any hearings regarding the April 24, 2003 Joinder Petition which Claimant filed against the City; however, Claimant was not, at any point, precluded from requesting discovery documents from the City or subpoenaing such relevant evidence to meet the Claimant's burden of proof. Accordingly, because Claimant did not meet his burden under *McGrail*, we find the Board did not err in its conclusion that the City was not the statutory employer under Section 302(b) of the Act and, therefore, not liable to Claimant for benefits under the Act.

Next, Claimant asserts that the Board applied the incorrect standard of review. Citing *Crews v. Workers' Comp. Appeal Bd. (Ripkin)*, 767 A.2d 626, 629 n. 3 (Pa. Cmwlth.2001) for support, Claimant argues that instead of using the standard of "whether the WCJ has committed an error of law or whether the findings of fact are supported by substantial, competent evidence," which the Board applied, the correct standard the Board should have applied is whether the WCJ "capriciously disregarded competent evidence."

More recently, the Pennsylvania Supreme Court discussed the "capricious disregard" standard of review in *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 571 Pa. 189, 203, 812 A.2d 478, 487 (2002), and stated that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." However, "where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which the appellate court would disturb an adjudication based upon capricious disregard." *Id.* at 204 n. 14, 812 A.2d at 488 n. 14. In the case at bar, even finding credible the testimony and evidence produced by Claimant, there is not substantial evidence to support the legal conclusion that the City is the statutory employer of

Claimant under Section 302(b) of the Act. Therefore, we find Claimant's argument without merit and affirm the Board.

Accordingly, based on the foregoing opinion, we affirm the Board.

Judge SIMPSON concurs in the result only.

### ORDER

NOW, May 23, 2006, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby AFFIRMED.