# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

J. Conley & Sons Plumbing,     :
                Petitioner     :
                        :
        v.                :    No. 883 and 884 C.D. 2016
                        :    SUBMITTED: March 31, 2017
Workers' Compensation         :
Appeal Board (Gainer),           :
               Respondent    :


BEFORE:     HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED: September 19, 2017**


J. Conley & Sons Plumbing (Employer) petitions for review of two orders of the Workers' Compensation Appeal Board (Board) involving Jesse Gainer (Claimant).[1] In No. A14-0353, the Board: (1) affirmed as modified the grant of the claim petition, excluding an inguinal hernia and herniated lumbar disc from the work injury due to the lack of an unequivocal opinion as to those conditions; (2) affirmed the penalty award based on Employer's failure to issue a timely Bureau document; and (3) affirmed the unreasonable contest determination and the award of counsel fees because Employer's medical witness did not disagree that Claimant sustained a work injury but Employer continued to contest both the nature of the work injury and the entire claim petition. In No. A15-0369,

---

[1] In August 2016, this Court granted Employer's unopposed applications to consolidate these matters.

the Board: (1) affirmed the grant of the modification petition based on Claimant's two periods of post-injury employment, as well as the WCJ's order awarding a credit to Employer for the overpayment of benefits during those periods, payable at $5 per week; (2) affirmed the award of ongoing benefits after the last period of employment; (3) affirmed the denial of the suspension petition;[2] (4) affirmed the grant of Claimant's penalty petition; and (5) affirmed as modified the WCJ's award of costs. On appeal, Employer is not challenging the adjudication of the nature of Claimant's work injury, but rather disputes the alleged "failure to afford it relief on the basis of claimant's surreptitious post-work-injury return to the work force with various employers and failure to provide the [WCJ] with accurate information regarding his work history and his medical history."[3] For the reasons set forth below, we affirm the Board's orders.

In January 2013, Claimant sustained a work-related injury after lifting a sewer machine in his capacity as a plumber's apprentice helper. In February 2013, he filed: (1) a claim petition alleging an injury to his groin area and seeking total disability benefits and payment of medical bills and counsel fees; and (2) a penalty petition, alleging that Employer failed to issue a timely Bureau document. At an April 2013 hearing, Claimant testified that he could not return to his pre-injury job, that he had not been offered light-duty work, and that he had not received any income since his work injury. April 15, 2013, Hearing, Notes of Testimony at 18, 19, and 28; Reproduced Record (R.R.) at 26a, 27a, and 36a. In an April 2014 decision, the WCJ: (1) granted the claim petition, determining that

---

[2] Employer does not dispute the denial of the suspension petition, noting that the earnings that were subsequently identified and documented warranted only a modification of benefits.

[3] Employer's June 9, 2017, Application for Relief (clarification), ¶ 7.

2

Claimant was totally disabled and entitled to weekly compensation of $414 into the indefinite future; (2) granted the penalty petition for failure to issue any bureau documents accepting or denying the claim; and (3) determined that Employer's contest was unreasonable. Employer appealed in April of 2014, and sought supersedeas, which was denied in May.

Shortly thereafter, also in May 2014, Employer filed a modification petition alleging that it learned after the above-described proceedings that Claimant had returned to work after his work injury. In March 2015, the WCJ granted the modification petition from August 3 to 26, 2013, after which total disability benefits were to be reinstated, and from April 4 to June 13, 2014, with the same reinstatement. In ascertaining the wages and time periods for his positions as a dishwasher for the Rose Tree Inn and a technician for Jiffy Lube, the WCJ relied on employment records that Employer procured via subpoenas. October 1, 2014, Hearing, Employer's Exhibits D-2 (Rose Tree Inn) and D-3 (Jiffy Lube); R.R. at 187-203a and 204-41a.

In addition, the WCJ also cited Claimant's affidavit indicating that he began working at the Rose Tree Inn at $8 per hour on April 21, 2014, because he had not yet received any benefits as of June 2, 2014, despite an April 2 award granting his claim. In support of his procurement of what he characterized as the lightest possible job that he could find to feed his family, Claimant referenced his wife's cancer, the household's lack of income, and no benefits "despite the insurance companies [sic] attorney's LIE to the court." July 9, 2014, Hearing, Exhibit C-12 (Claimant's June 9, 2014, Affidavit); R.R. at 128a.

As the Board subsequently clarified, the WCJ erroneously found that Claimant's affidavit encompassed both employers whereas it addressed only the

3

Rose Tree Inn. In addition, notwithstanding his stint with Jiffy Lube, Claimant testified at that July 2014 hearing that, other than the Rose Tree Inn, he did not work anywhere else after his work injury.[4] *Id*., N.T. at 18; R.R. at 121a. Nonetheless, the WCJ made the following fact-finding:

> 22. This Judge has personally observed Claimant's testimony and finds that his composure and demeanor supports his veracity. Claimant is credible that he was in dire financial straits when he testified for this Judge and did not have enough money to pay for his wife's cancer treatment. This Judge accepts his testimony and his Affidavit as to his work at Rose Tree Inn and Jiffy Lube. This Judge accepts that the work Claimant performed at [both employers] was lighter duty work.

WCJ's March 11, 2015, Decision, Finding of Fact (F.F.) No. 22. At all events, based on the wages from those two employers, the WCJ awarded a $4430.62 credit to Employer with a weekly credit of $5 until recoupment.

In her March 2015 decision, the WCJ also considered Claimant's penalty petition wherein he alleged that Employer violated the Workers' Compensation Act[5] by (1) advising the WCJ in the claim petition proceedings that his claim had been accepted but then filing an appeal from the award of benefits; and (2) alleging that payment would be made when none was rendered. In

---

[4] Regarding credibility, the Board observed:

> In [his] brief, Claimant states that obviously he did work at Jiffy Lube in 2013 and whether his denial of working anywhere else other than Rose Tree Inn "was a mistake, a miscommunication or a lie was for the Judge to decide." While we may question Claimant's veracity, the fact remains that questions of credibility are for the fact-finder and the WCJ chose to accept Claimant's testimony.

Board's May 4, 2016, Opinion in No. A15-0369 at 10 n.5.

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

4

granting the penalty petition, the WCJ entered an order: (1) awarding a five percent penalty on the amount due from January 10, 2013, to June 7, 2014 (when Claimant received his first payment of benefits); and (2) directing that Employer pay Claimant's counsel an attorney's fee award on the penalty in the amount of twenty percent, to be paid directly to Claimant's counsel with the balance of the penalty to be paid directly to Claimant; and (3) directing Employer to pay Claimant's counsel costs of litigation in the amount of $502.45.[6]

In May 2015, the Board affirmed the WCJ's initial April 2014 decision as modified, to exclude the inguinal hernia and herniated lumbar disc from the injury description. In June 2015, Employer sought Board rehearing based on after-discovered evidence that Claimant had surreptitiously returned to work by March 2014 for at least two employers (essentially the same basis as that of its modification/suspension petition). The Board granted Employer's rehearing petition, but subsequently reaffirmed its previous decision and stated, in relevant part, as follows:

> [A] large portion of [Employer's] argument for remand goes to the question of whether Claimant had employment after his January 10, 2013 work injury and whether he is entitled to ongoing total disability benefits. However, [Employer] acknowledges that it filed a Modification/Suspension Petition to address this question and that on March 11, 2015, the WCJ issued a ruling on its request for relief, granting it in part. [Employer] has appealed several aspects of that determination. Its challenges to that Decision and Order are addressed in a separate Opinion and Order, docketed at A15-0369. Thus, its concerns will not escape review. Given the aforementioned, we find nothing constituting a sufficient

---

[6] The Board subsequently reduced the litigation cost reimbursement to Claimant by $45. Board's May 4, 2016, Opinion in No. A15-0369 at 13.

5

> basis for disturbing our May 15, 2015 Opinion and Order.

Board's May 4, 2016, Opinion in No. A14-0353 at 6-7.

In a separate Board decision issued on the same date, it considered, *inter alia*, the WCJ's decision to grant Employer's modification petition and Claimant's penalty petition. In affirming the grant of the modification petition, the Board acknowledged "the error in the WCJ's finding that Claimant's testimony and Affidavit spoke to his employment at Jiffy Lube when they clearly did not" and the fact that "[t]he WCJ's findings to the effect that Claimant's evidence recognized this employment and established the job duties are not supported." Board's May 4, 2016, Opinion in No. A15-0369 at 10. Nonetheless, it relied on the fact that Claimant ultimately did not dispute that he was employed at Jiffy Lube for the period at issue and that he earned wages thereby warranting a credit to Employer. Further, the Board approved stretching out the payment of that credit at $5 per week, noting the WCJ's credibility determination as to Claimant's unfortunate situation and concluding that she had the authority to award the credit with a weekly deduction. *Id*. at 12.

In affirming the grant of the penalty petition, the Board opined that "the 5% award does not evidence a manifestly unreasonable award or any ill will on the WCJ's part, but more so a recognition of [Employer's] failure to comply with the Act." *Id*. In support, the Board cited *Allegis Group v. Workers' Compensation Appeal Board (Coughenaur)*, 7 A.3d 325, 327 (Pa. Cmwlth. 2010), holding that an abuse of discretion occurs when a WCJ's judgment is manifestly unreasonable, the law is not applied, or the record shows partiality, bias or ill will. Employer's timely petitions for review of the Board's orders followed.

6

Mindful that Employer is not challenging the adjudication of the nature of Claimant's work injury, we consider the following cognizable arguments: (1) that the WCJ erred in disregarding the notations in the Jiffy Lube employment record indicating an alleged discharge for misconduct and thus awarding total rather than partial disability benefits going forward after he was terminated from that job; (2) that the Board should have ordered a new hearing because the WCJ committed various evidentiary and fact-finding errors; (3) that the WCJ erred in computation of a $4430.62 credit to Employer, and that it was an abuse of discretion to order that the credit be recouped at $5 per week; and (4) that the Board erred in refusing to rescind or reduce the imposition of penalties and award of counsel fees. We turn to the first issue.

It is well established that when a claimant returns to light-duty employment at a wage loss and is discharged for willful misconduct, he is entitled only to continuing partial disability benefits. *Howze v. Workmen's Comp. Appeal Bd. (Gen. Elec. Co.)*, 714 A.2d 1140, 1142 (Pa. Cmwlth. 1998). Specifically, there is a presumption that his disability from the work injury continues and he is entitled to continue to receive partial disability benefits, calculated according to the wages he would have earned but for his misconduct. *Id.* The employer, however, bears the burden of establishing that a claimant's loss of earnings is the result of a post-injury involuntary discharge. *Virgo v. Workers' Comp. Appeal Bd. (County of Lehigh-Cedarbrook)*, 890 A.2d 13, 19 (Pa. Cmwlth. 2005).

In the present case, the record reflects that Employer received the Jiffy Lube record in July 2014[7] and that the WCJ accepted that record into evidence at

---

[7] October 1, 2014, Hearing, Employer's Exhibit D-3 (Jiffy Lube record); R.R. at 204a.

7

the final hearing in October 2014.[8]  In her decision, the WCJ relied on the Jiffy Lube record to establish wages and employment duration but disregarded the notations regarding an alleged discharge for misconduct.  In determining that the WCJ did not err in disregarding these notations, the Board relied on the Walker Rule, providing that, even where otherwise inadmissible hearsay evidence is admitted without objection, it may only support a finding if corroborated by competent evidence of record.  *Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976).

Employer disputes the Board's analysis, noting that it offered an authenticating deposition affidavit from Jiffy Lube and that Section 131.68 of the Special Rules of Administrative Practice and Procedure before WCJs provides: "The deposition affidavit and the records or items authenticated thereby [such as employment records] will be admissible into evidence in the proceeding before the judge in the same manner as if the deponent appeared before the judge and testified as to the authenticity of the records or items."  34 Pa. Code § 131.68(g).  Employer then argues that the records were admissible under what is commonly called the business records exception to the hearsay rule.  This argument is correct to the extent that the records were properly authenticated, but only partially correct regarding hearsay.  While the records of regularly conducted business activity fall within an exception to the hearsay rule,[9] not every notation in a business record qualifies.

---

[8] The record reflects that only counsel for Employer was present at that hearing.  Noting that counsel for Claimant was running late, the WCJ stated that "we're just going to do the evidence." October 1, 2014, Hearing, N.T. at 3.  At that time, Employer's exhibits were marked and received into evidence.

[9] *See* Pa. R.E. 803(6).

8

Here, the routine entries such as Claimant's dates of employment, wages paid, etc., are fully admissible and were properly relied upon by the WCJ. The evidence about which Employer complains, however, does not fall within that exception. Even if we believed that a notation saying Claimant admitted taking cash was made in the regular course of business, and thus could be admitted to show Employer's action and motive for the termination—an issue which we need not here decide—it cannot be admitted to prove *as truth* that Claimant actually committed the theft or made such a statement to someone who did not testify, was not subject to cross-examination, and was not even identified as to his position or authority. That would go far beyond the underlying principle of the business record exception: that routine record entries made in the regular course of business by a person with knowledge, absent some contraindication, are inherently reliable. *See* Leonard Packel & Anne Poulin, *Pennsylvania Evidence* § 803(6)-1 (4th ed. 2013). Employer obtained the records three months before the final hearing and plainly had the opportunity to subpoena the person who made the note, or to call Claimant as of cross-examination to ask about Claimant's purported admission. Instead Employer chose to rely on the paper record, avoiding the scrutiny attendant to the cross-examination or explanation which might accompany such testimony. However, this paper evidence did not fall within the exception to the hearsay rule and, while properly admitted without objection, could not be the sole basis of a finding that Claimant's loss of employment was due to his own misconduct. Thus we agree with the Board that based on the Walker Rule the WCJ did not err in disregarding the notations.[10]

---

[10] In addition, the rule does not supplant the WCJ's role as the ultimate arbiter of evidence where she has exclusive province over questions of evidentiary weight and may accept, reject **(Footnote continued on next page…)**

Employer's next argument is basically a challenge to the WCJ's credibility determinations. Essentially, it argues that Claimant failed to disclose, and later lied about, his return to work after his injury, and that if the WCJ had known about this in the beginning her findings might have been different. It argues that it did not discover Claimant's return to work or certain medical records until after the claim petition was decided. Yet, as the Board noted, most of this evidence could have been discovered with due diligence before the WCJ issued her first opinion. Moreover, most of this evidence was presented to the WCJ in the modification/suspension proceedings and it did not change her underlying impression of Claimant's credibility. While we, like the Board, might have viewed the evidence differently, we cannot say that the WCJ's credibility determinations were capricious. Finally, as the Board also determined, the surveillance evidence of Claimant working at Rose Tree Inn, which was not admitted, and the discredited testimony of Employer's witness concerning the Jiffy Lube job were of no moment since the WCJ accepted other proof of Claimant's work for both of these subsequent employers.

Next, Employer claims that the WCJ erred in calculating the credit to which it was entitled as a result of Claimant's undisclosed return to the work force in August of 2013 and April through June of 2014. While we agree with Employer that the credit should have been based on the difference between the total disability benefits actually (albeit belatedly) paid and the partial disability benefits to which Claimant was entitled, rather than on the wages he was paid, Employer's claim that

---

(continued…)

and/or disregard portions of an employment record. *See Griffiths v. Workers' Comp. Appeal Bd. (Red Lobster)*, 760 A.2d 72, 76 (Pa. Cmwlth. 2000).

10

the credit was deficient is based on the false premise that Claimant was entitled to only partial benefits going forward after the first date he went back to work. Properly computing the credit based on the nine weeks that Claimant was actually employed would result in a credit less than that allowed by the WCJ. Employer's more fully-developed complaint lies with the WCJ's order that the credit be paid over a long period at the rate of $5 per week. However, as the Board noted, the WCJ properly took into account Claimant's financial difficulties, including his inability to pay his wife's medical bills, and the fact that Employer was not paying disability benefits at the time, even though it was undisputed that Claimant had some form of work injury. It is clear that the WCJ weighed Employer's violations of the Act in rendering her decision. The Board concluded that the WCJ "with the power under the Act to determine whether a party has been erroneously overpaid, had the authority to resolve this situation in this manner [$4430.62 with weekly deduction of $5]." Board's May 4, 2016, Opinion in No. A15-0369 at 12. In support, the Board cited *Fahringer, McCarty & Grey, Inc. v. Workmen's Compensation Appeal Board (Green)*, 529 A.2d 56, 59 (Pa. Cmwlth. 1987), where we sympathized with the claimant's difficulty in making restitution of monies erroneously overpaid for six years due to miscalculation of his average weekly wage and directed the Board to order a sum deducted from each of his benefit checks in an amount the Board believed would be just under the circumstances and manageable for the claimant. *See also City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wright)*, 90 A.3d 801, 812 n.11 (Pa. Cmwlth. 2014) (where a claimant was receiving both a pension and workers' compensation benefits, the terms of a proposed recoupment of overpaid workers' compensation benefits could be modified consistent with the humanitarian purposes of the Act where it would ease

11

his financial hardship). Accordingly, mindful of the humanitarian purposes of the Act,[11] we decline to disturb the WCJ's order as to the manner of repaying the overpayment.

Employer next maintains that the Board erred in failing to rescind or reduce the impositions of penalties and award of counsel fees. Employer's position is without merit. The record is permeated with instances where both parties had unclean hands. Unfortunately for Employer, the WCJ made credibility determinations in Claimant's favor and Employer's violations of the Act were apparent from the record. Accordingly, we agree with the Board that the award does not constitute a manifestly unreasonable award or establish any ill will on the WCJ's part.

For these reasons, we affirm the Board's orders.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[11] *Vandervort v. Workers' Comp. Appeal Bd. (City of Phila.)*, 899 A.2d 414, 419 (Pa. Cmwlth. 2006).

12

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

J. Conley & Sons Plumbing,     :
               Petitioner    :
                          :
       v.                :    No. 883 and 884 C.D. 2016
                          :
Workers' Compensation       :
Appeal Board (Gainer),        :
             Respondent   :

# **O R D E R**

AND NOW, this 19th day of September, 2017, the orders of the Workers' Compensation Appeal Board are hereby AFFIRMED.

                           _____

                           **BONNIE BRIGANCE LEADBETTER,**
                           Senior Judge